THELMA QUILLEN, INDIVIDUALLY AND AS
ADMINISTRATRIX *v.* TWIN CITY BANK

5-6020                                      485 S.W. 2d 181

Opinion delivered October 9, 1972

*J. Harrod Berry,* for appellant.

*Tanner & Wallace,* for appellee.

GEORGE ROSE SMITH, Justice. This suit was brought by the appellee bank to recover the unpaid balance upon two promissory notes. The original defendants were the principal debtor, United Financial Services, Inc., a second corporation, Dealer's Supply, Inc., and four individuals, Hale Allen, C. G. Ball, Doyle Quillen, and Jimmy C. Harris, who were directors or officers of United Financial. The trial court, upon the pleadings, affidavits, and counter-affidavits, entered summary judgment for the plaintiff.

This appeal from the summary judgment and from a supplementary decree was taken by Quillen and his wife, who had been joined as a party to the suit. Quillen died pending the appeal, and the cause was revived in the name of the appellant, his widow, as administratrix.

Upon this appeal the controlling question is whether the record sustains the trial court's action in entering a summary judgment. Upon that issue it is familiar law that such a judgment is an extreme remedy, that the burden is upon the moving party to show that there is no genuine issue of fact, and that the evidence submitted upon the motion must be viewed most favorably to the party resisting the motion. *Harvey* v. *Shaver,* 247 Ark. 92, 444 S.W. 2d 256 (1969). When the foregoing principles are applied to the case at bar we are unable to sustain the entry of the summary judgment.

The pivotal question is whether Quillen's countervailing affidavits raised substantial issues of fact. The bank's pleadings and proof showed that on March 25, 1970, the first note to the bank, for $200,000, was executed by the two corporations and the four individuals. The latter evidently signed as guarantors, because on the same day they executed a written agreement guaranteeing the payment of the note. Of course the two instruments, being part of the same transaction, are to be construed together. *Gowen* v. *Sullins,* 212 Ark. 824, 208 S.W. 2d 450 (1948). About five months later the second note sued upon, for $75,000, was executed by United Financial alone. The bank's proof showed the amount due upon each note.

Quillen's counter-affidavits raised a number of defenses. We need not discuss all those defenses upon their merits, for the proof has not yet been fully developed. At this stage of the case it is enough for us to point out that the evidence with respect to at least three of the defenses raised genuine issues of fact.

First, Quillen asserted that the $200,000 note had been materially altered without his consent, in that the bank and United Financial by agreement reduced the monthly payments from $17,536.80 to $10,000, to Quillen's prejudice. The bank does not deny the alteration of the note,

but it insists that Quillen was not in a position to complain, because the contemporaneous guaranty agreement recited that the guarantors "consent that the time of payment may be extend without notice." Construing the record most favorably to the appellant, we cannot say as a matter of law that an alteration by which the amount of the monthly payments was greatly reduced was a mere extension of the time for payment of the note.

Secondly, the $75,000 note, instead of being signed by United Financial's president and secretary, was signed by Harris as "chairman of the board" and by Ball as secretary. Both Quillen and Allen, the latter being president of the corporation, asserted by affidavit that Harris was not authorized to execute the note on behalf of the company. That assertion was not denied by the bank, which merely argues here that the appellant's contention is a collateral attack upon the judgment against United Financial. We cannot sustain that reasoning, which would mean that United Financial's failure to appeal from the judgment against it would preclude Quillen from asserting his own defenses to that same judgment in favor of the bank.

Thirdly, both Quillen and Allen stated on oath that they were induced to sign the guaranty without reading it, because they were fraudulently assured by the bank's representatives that the guaranty contract related only to the original note, without reference to any later advances. Those statements are not denied. The defense accordingly raised an issue of fact, because one party's fraud may excuse the other party from reading a contract before he signs it. *Belew* v. *Griffis,* 249 Ark. 589, 460 S.W. 2d 80 (1970).

In closing, we should mention one other point. After the entry of the summary judgment the trial court entered a supplementary order canceling, as a fraudulent conveyance, a deed by which Quillen conveyed certain land to his wife. The court also directed that the land be sold, with the proceeds to be applied upon the judgment against Quillen. The sale was held, because the Quillens did not supersede the order of sale. Apparently the property was bought by purchasers who were strangers to the litigation.

The bank seems to argue that the Quillens' failure to supersede the order of sale precludes Mrs. Quillen from

contending in this court that the chancellor erred in setting aside the deed that was alleged to be fraudulent. That argument is unsound. A debtor's failure to supersede an order of sale does, it is true, have the effect of protecting a third-party purchaser at the sale against a loss of title resulting from a reversal of the decree leading to the sale. *Griffin* v. *Soloman,* 237 Ark. 653, 375 S.W. 2d 232 (1964); *Orem* v. *Moore,* 224 Ark. 146, 272 S.W. 2d 60 (1954). But the debtor's financial inability to supersede the order of sale does not and should not cause him to lose his rights altogether. *Ibid.* Consequently the bank is in error in insisting that the Quillens' failure to supersede the order of sale prevents Mrs. Quillen from questioning the basis for that order.

Reversed.

HOLT, J., not participating.