Louis Art DODRILL *v.* ARKANSAS
DEMOCRAT COMPANY et al

78-10                                    590 S.W. 2d 840

Substituted Opinion on Rehearing
delivered July 2, 1979
(In Banc)
[Rehearing denied September 10, 1979.]

*Brown & Etter*, by: *Richard Quiggle;* and *Louis A. Dodrill*, for appellant.

*Wright, Lindsey & Jennings*, for appellees.

P. H. HARDIN, Special Justice. This appeal is prosecuted from an order of the lower court sustaining a motion for summary judgment, which dismissed Appellant's complaint seeking damages for libel and invasion of privacy. The factual background giving rise to the litigation is necessary to a clear disposition of the issues on appeal.

On February 4, 1975, upon a complaint filed by the Supreme Court Committee on Professional Conduct, the Pulaski Circuit Court entered judgment suspending Louis Art Dodrill's license to practice law for a period of 12 months. The judgment conditioned the reinstatement of Dodrill's license thereafter only upon Dodrill's satisfactorily passing the regular examination for admission to the bar. No appeal from the judgment was taken by Dodrill, but he subsequently filed a petition in this court challenging the circuit court's power to condition the reinstatement of his license upon his taking and passing the regular bar examination for admission to the bar. We dismissed the petition holding that the circuit court acted within its jurisdiction. *See, In Re Dodrill*, 260 Ark. 223, 538 S.W. 2d 549 (1976).

Thereafter, Dodrill took the regular bar examination administered August 9-11, 1976. The Board of Bar Examiners met in regular session and on August 21, 1976, announced the names of applicants who had passed the examination. The Secretary of the Board of Bar Examiners, in keeping with a long standing practice, provided a list of the names of the applicants who had passed the examination to the major newspapers in the state, namely, the *Arkansas Democrat* and the *Arkansas Gazette*.

The Sunday, August 22, 1976, issue of the *Arkansas Democrat* included an article which, among other things, stated:

## SUSPENDED LR LAWYER FAILS BAR EXAMINATION

Louis Arthur Dodrill, a Little Rock lawyer whose license was suspended for a year on Feb. 4, 1975, for unethical conduct in his dealings with four clients, failed to pass the August examination of the State Board of Bar Examiners.

Following the above publication, Dodrill filed a petition for writ of mandamus in the Pulaski Circuit Court seeking an order directing the State Board of Bar Examiners to report his scores on the August, 1976, examination. The Board of Bar Examiners filed a motion to dismiss and on October 27, 1976, the *Arkansas Democrat,* in an article headlined "EXAM BOARD LAWYER ASKS SUIT DISMISSAL", recounted the efforts by the Board of Bar Examiners to have the suit dismissed, and a brief history of the controversy, including that Dodrill's name had not been published along with the list of successful examinees.[1]

---

[1]The October 27, 1976 article stated:

Robert L. Rogers II, a lawyer for the state Board of Law Examiners, has filed a motion in Pulaski Circuit Court asking Circuit Judge Tom F. Digby to dismiss a lawsuit filed by a suspended lawyer who wants to know his score on the Aug. 9 state bar examination.

Louis Art Dodrill of 3000 Maryland Avenue filed the suit Oct. 5 asking Digby to force the state board to make public his score and to order the board to inform him whether he passed the examination.

Dodrill did not appear at a hearing in the case last week, and Rogers' motion was the latest maneuver in a long controversy that dates back to Feb. 18, 1975.

Digby ruled on that date that Dodrill's license to practice law would be suspended for one year because of unethical conduct in his dealings with four clients. The judge said Digby's [Dodrill's] license couldn't be reinstated until he passed the exam again.

Dodrill missed the deadline for appealing Digby's ruling to the

Being unsuccessful in the mandamus proceedings, Dodrill filed complaint against the members of the Board of Bar Examiners in the United States District Court seeking injunctive and other relief alleging, among other things, that the members of the Board of Examiners were responsible for the publication of the first above quoted article appearing in the *Arkansas Democrat*.

The affidavits, interrogatories and answers thereto, together with other factual materials properly before the trial court require the following findings: (1) that Dodrill, in fact, had passing scores upon the written examination administered by the Board of Bar Examiners in August of 1976; (2) that the Board of Bar Examiners declined to list his name among the applicants who successfully passed the examination at that time; (3) that Dodrill was not listed because the Board was continuing its investigation into Dodrill's conduct during the period of his suspension and to otherwise determine that he, in all respects, conformed to requirements of this court for admission to practice; and (4) that finally, on May 14, 1977, the Board of Bar Examiners certified Dodrill to be licensed, he having successfully passed the examination.

Following the reinstatement of his license, Dodrill filed his complaint in the court below seeking damages against the *Arkansas Democrat* for libel contained in the publication of the two articles above mentioned and for invasion of his right to privacy. In sustaining the *Arkansas Democrat's* motion for summary judgment dismissing Dodrill's complaint, the trial court found, *inter alia*, that Dodrill had gained the status of a "public figure" because of litigation and publicity surrounding his suspension from the practice of law; that the article complained of contained material of general and public concern, namely, requirements for admission to the bar and ef-

---

state Supreme Court, and the Supreme Court ruled on July 12 that the appeal had not been lodged in time.

Dodrill then filed suit against the bar group seeking to determine his score.

When the results of the Aug. 9 bar examination were made public, only those who passed the examination were listed. As a rule, the law examiners do not mention those who fail.

forts for readmission to the bar by a previously suspended lawyer; and that Dodrill had failed to demonstrate that the articles were published with actual malice.

We recognize as controlling the time-honored rule that a summary judgment is an extreme remedy. The burden is upon the moving party to demonstrate that there is no genuine issue of material fact for trial, and evidence submitted in support of the motion must be viewed most favorably to the party resisting the motion. *Lallman* v. *Carnes*, 254 Ark. 987, 497 S.W. 2d 47 (1973); *Quillen, Adm's* v. *Twin City Bank*, 253 Ark. 169, 485 S.W. 2d 181 (1972).

## A. *THE LIBEL CLAIM*

The central issue presented by this appeal is whether the court erred in finding Dodrill was a "public figure", thus affording the *Arkansas Democrat* First Amendment protection from an action for defamation in the absence of proof of actual malice as that doctrine has been announced by numerous decisions of the United States Supreme Court. *New York Times Company* v. *Sullivan*, 376 U.S. 254 (1964); *Curtis Publishing Co.* v. *Butts*, 388 U.S. 130 (1967); *St. Amant* v. *Thompson*, 390 U.S. 727 (1968); *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29 (1971).

*Rosenbloom, supra*, extended the privilege announced in *New York Times* v. *Sullivan, supra*, to publications concerning matters of general or public interest regardless of the plaintiff's status. However, the Court in *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974) repudiated *Rosenbloom* and held that the general rule announced there was inappropriate in those cases where the reputations of private individuals were placed in jeopardy.

In *Gertz*, the Court noted that public figures usually enjoy significantly greater access to channels of effective communication than private individuals. The Court reasoned that private individuals were more vulnerable because of lack of a forum to rebut false statements and that they were more deserving of recovery because they had not thrust themselves

into the vortex of public controversy. The Court defined "public figures" as individuals who

> have assumed rules of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. *Id.* 345.

The definition of "public figure" is quite broad and, indeed, one may be held a public figure for limited purposes. Various courts have held included within the definition a football coach,[2] political activist,[3] wife of nationally known television celebrity,[4] editor of newspaper,[5] and a belly dancer.[6] The classification of "public figure" in these instances was justified by the particular facts of those cases. While all of the individuals who have been held to be public figures have not taken active parts in debates on public issues, they nevertheless remained persons in whom the public has a continuing interest in that in each instance the individual had taken affirmative steps to attract public attention or had strived to achieve some degree of public acclaim.

The most celebrated decision dealing with the question of public figure versus private individual is *Time, Inc.* v. *Firestone,* 424 U.S. 448 (1976), which arose out of a libel action by the former wife of an heir of one of America's wealthiest industrial families. The Court rejected the publisher's contention that Mrs. Firestone was a public figure even though it appeared from the Court's opinion, both majority and dissent, that she was a fairly publicized individual who had held a few or several press conferences. The Court particularly pointed to its definition of "public figure" as defined in *Gertz* and concluded that Mrs. Firestone did not

---

[2]*Curtis Publishing Co.* v. *Butts,* 388 U.S. 130 (1967).
[3]*Associated Press* v. *Walker,* 388 U.S. 130 (1967).
[4]*Carson* v. *Allied News Co.,* 529 F. 2d 206 (7th Cir. 1976).
[5]*Tait* v. *King Broadcasting Co.,* 1 Wash. App. 250, 460 P. 2d 307 (1969).
[6]*James* v. *Gannett Co., Inc.,* 40 N.Y. 2d 415, 353 N.E. 2d 834 (1976).

assume a role of especial prominence in the affairs of society and that she had not thrust herself to the forefront of any public controversy in order to influence its resolution.

The Court in dealing with the publisher's contention that the Firestone divorce had been characterized by the Florida Supreme Court as a "cause celebre" and that it was a public controversy, observed:

> But in so doing Petitioner seeks to equate 'public controversy' with all controversies of interest to the public. Were we to accept this reasoning, we would reinstate the doctrine advanced in the plurality opinion in *Rosenbloom* . . . which concluded that the *New York Times* privilege should be extended to falsehoods defamatory of private persons whenever the statements concern matters of general or public interest. *Id.* 454.

The Court concluded that a divorce is not the sort of public controversy referred to in *Gertz* even though the matrimonial difficulties of some individuals may be of interest to a portion of the reading public. The Court further observed that Mrs. Firestone did not freely choose to publicize the issues but was compelled to resort to the judicial process to obtain a release from the bonds of matrimony. "We have said that in such an instance '[r]esort to the judicial process . . . is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court.' " *Id.* 454. The Court further found that Mrs. Firestone had not assumed special prominence in the resolution of public questions and, therefore, held that she was not a public figure.

The record in the case at bar is devoid of facts supporting the lower court's finding that Dodrill had attained "public figure" status. He had not thrust himself into the vortex of public controversy and, in fact, any showing of a public controversy was absent. Moreover, he neither had taken steps to attract public attention, nor had he strived to achieve a degree of public acclaim. His activities were restricted to complying with the lawful mandate of the circuit court by applying for and taking the regular bar examination in August, 1976, an event in which the names of the

applicants were not released for public dissemination.[7] Whether he passed or failed would no more relegate him to "public figure" status than did the representation of a client in a highly emotional and publicized case relegate Gertz to "public figure" status, or than did the widely publicized activities relegate the celebrated Mrs. Firestone to "public figure" status. We therefore hold that the lower court erred in granting the motion for summary judgment based on the record before it as to Appellant's cause of action for defamation.

## B. *THE INVASION OF PRIVACY CLAIM*

The invasion of privacy claim stands upon a different footing than the defamation claim. The law delineating conduct constituting an invasion of privacy and thus, an actionable wrong, is codified in RESTATEMENT (SECOND) OF TORTS, §652A (1977):

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another . . .

(b) appropriation of the other's name or likeness . .

(c) unreasonable publicity given to the other's private life. . .

(d) publicity that unreasonably places the other in a false light before the public . . .

In *Olin Mills, Inc. v. Dodd,* 234 Ark. 495, 353 S.W. 2d 22

---

[7]Application for and administration of the bar examination are not matters of public record. To preserve the integrity of the admission process these matters of necessity must be closely guarded and uncompromised by public dissemination.

(1962) we recognized invasion of privacy[8] as an actionable wrong. *Olin Mills* involved conduct described in Par. 2(b) of the Restatement principles, while the instant case involves conduct allegedly violating Par. 2(d), as above set forth.

The right to recover for an invasion of privacy is conditioned upon the complaining party's demonstrating that (1) the false light in which he was placed by the publicity would be highly offensive to a reasonable person, and (2) that the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. RESTATEMENT (SECOND) OF TORTS, §652E (1977).

A cause of action both for "false light" invasion of privacy and for defamation can be joined in the same action. *See, e.g., Varnish v. Best Medium Publishing Co.,* 405 F. 2d 608 (2d Cir. 1968). However, there can be but one recovery for any particular publication. RESTATEMENT (SECOND) OF TORTS, §652E, Comment b. *See also,* 62 Am. Jur. 2d, *Privacy,* §5 (1972).

In *Time, Inc. v. Hill,* 385 U.S. 374 (1967), the Supreme Court held that First Amendment protection precluded recovery upon a cause of action for "false light" invasion of privacy by a private individual against a publishing company in the absence of proof that the Defendant published the information with knowledge of its falsity or in reckless disregard of the truth. Thus, actual malice must be demonstrated by one seeking to recover for invasion of privacy. This requires a showing of more than mere

---

[8]Neither the United States Constitution nor the Common Law recognized a cause of action for violation of the right to privacy as such. The concept stems primarily from Warren and Brandeis' *The Right to Privacy,* 4 Harv. L. Rev. 193 (1890). The late William L. Proser wrote extensively in this area. His work, *Privacy,* 48 Calif. L. Rev. 383, (1960) was in large measure the inspiration of the American Law Institute's principles noted above. The majority of jurisdictions now recognize the right to privacy and Arkansas has been included in that majority with the decision in *Olin Mills, supra. See also,* Note, *Torts—Invasion of Privacy by Publication of a Photograph,* 3 Ark. L. Rev. 105 (1948-49); Comment, *The Right of Privacy,* 6 Ark. L. Rev. 459 (1952); Comment, *Privacy: The Polygraph in Employment,* 30 Ark. L. Rev. 35 (1976).

negligence. There must be sufficient evidence to permit the conclusion that the Defendant, in fact, entertained serious doubts as to the truth of his publication. In *Logan* v. *District of Columbia*, 447 F. Supp. 1328 (D. D.C. 1978), an action by a private individual for invasion of privacy, the court said:

> Finally, plaintiff's invasion of privacy claims as to the erroneous report that his urine test indicated drug usage must be considered. On this claim plaintiff appears to assert that the article invaded his privacy by placing him in a false light. To recover on such a theory, however, the plaintiff must demonstrate that the article was published with knowledge of its falsity or in reckless disregard of the truth — i. e. that it was published with actual malice. *Time, Inc.* v. *Hill*, 385 U.S. 374, 386-91, 87 S.Ct. 534, 17 L.Ed. 2d 456 (1967); *cf. Cantrell* v. *Forest City Publishing Co.*, 419 U.S. 245, 249-52, 95 S. Ct. 465, 42 L.Ed. 2d 419 (1974). *Id.* 1333.

Where the Plaintiff is not a public figure and the publication is of matters of general or public concern, the rule laid down in *Time, Inc.* v. *Hill, supra,* dictates that a plaintiff must prove actual malice and that decision remains the law with respect to invasion of privacy actions. Later decisions of the Supreme Court which have retreated from the malice standard in private individual defamation actions have not eroded the rule of *Time, Inc.* v. *Hill, supra,* as to "false light" privacy actions.[9] The Plaintiff's burden of proof is governed by the clear and convincing evidence standard rather than by the preponderance of the evidence standard. *New York Times Co.* v. *Sullivan, supra,* 285-286; *Hoffman* v. *Washington Post Co.*, 433 F. Supp. 600, 604 (D. D.C. 1977).

In the instant case, the affidavits and other matters properly before the court, clearly demonstrate that the *Arkansas Democrat* did not publish the articles in question with knowledge of falsity or in reckless disregard of the truth.

---

[9]In *Cantrell* v. *Forest City Publishing Co.*, 419 U.S. 245 (1974), the Court consciously abstained from examining the status of *Time, Inc.* v. *Hill, supra,* in the light of *Gertz* v. *Welch, supra.* It is the duty of this court to follow the mandate of *Time, Inc.* v. *Hill* until the rule announced therein has been modified or overruled.

There being therefore no genuine issues of any material fact with regard to the "false light" invasion of privacy claim, we affirm the trial court's action in entering summary judgment with regard to that cause of action.

Affirmed in part, reversed in part.

GEORGE ROSE SMITH, HOLT, and HICKMAN, dissent.

DARRELL HICKMAN, Justice, dissenting. The majority, as it is reconstituted, has decided to take a restrictive approach to the problem presented in this case.

It now literally applies some language from United States Supreme Court decisions, notably the cases of *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed 2d 789 (1974), and *Time, Inc.* v. *Firestone*, 424 U.S. 448, 96 S. Ct. 958, 47 L. Ed 2d 154 (1975). It also chooses to ignore some language from those cases and not apply that language I quoted from the *Gertz* case which recognizes that an individual can become a public figure for a "limited range of issues."

While the majority recognizes that a belly dancer and a football coach can be a public figure, it holds that a lawyer, whose license to hold a position of public trust is in issue, is not a public figure. Who, then, is a public figure? Apparently, aside from elected officials who are recognized by all of us as public figures, only notorious criminals or controversial figures of the highest order. It is regrettable the majority has elected to literally and restrictively apply the standard of law applicable. It is always easier to make such an application. It takes no flexibility, tolerance or ingenuity to do so. It is a haven often sought when tough decisions must be made. It is safer.

Whether Dodrill's status as a lawyer affects the majority, I cannot say. He was not representing a client as was Gertz. He was not in litigation over a private personal matter as was Mrs. Firestone. He was, as we said in our original opinion, in the public eye because of his breach of a public trust. Would a physician, seeking return of his license after losing it for im-

properly authorizing drugs, become a public figure? Would a druggist become a public figure under the same circumstances? Such individuals, like Dodrill, would not be ordinary professional people minding their own business, practicing their trade, unwittingly subject to the glare of publicity. They would be individuals who had violated their public trust because of their own misdeeds and were, for good or ill, about to resume their roles as individuals having a public trust. The public in every such instance has a right to know about such a situation and that is a consideration that must be given when deciding such cases.

What right or need does the public have to know about the goings on of a belly dancer or a football coach? Less, I dare say, than about a lawyer whose license has been suspended for unethical conduct.

Finally, and most importantly, the effect of the majority's decision is to limit the First Amendment of the United States Constitution. That is the substantive issue before us. Any limitation of the freedoms contained in that Amendment, for whatever good intentions, should be made only after careful consideration of the consequences. Any limitations, against whoever, for whatever reasons, cut across everyone's right (with some limitations, of course) to say what he pleases, about whom he pleases — an American tradition that no other nation has enjoyed nor any government permitted. It is a freedom that ought to be preserved and it is limited in Arkansas by the majority's decision to grant a rehearing in this case.

I respectfully dissent from this decision and would deny the petition for rehearing.

I am authorized to state that GEORGE ROSE SMITH and HOLT, JJ., join in this dissent.