Lansdowne, Appellee, *v.* Beacon Journal Publishing Company et al., Appellants.

[Cite as Lansdowne *v.* Beacon Journal Pub. Co. (1987), 32 Ohio St. 3d 176.]

(No. 86-1263—Decided September 2, 1987.)

*Daniel J. Jamieson,* for appellee.
*Roetzel & Andress, Norman S. Carr, Ronald S. Kopp* and *Robert J. Caffrey,* for appellants.

LOCHER, J. This appeal once again presents this court with the general problem of reconciling the law of defamation with the freedoms guaranteed under the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution.

In reaching its decision, the court of appeals relied upon the standard of

liability for defamation actions brought by private-figure plaintiffs as enunciated by this court in *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, 9 OBR 115, 457 N.E. 2d 1164. The *Embers* court held that the standard of review for defamation actions involving private individuals and the media was an ordinary negligence standard which must be proven by a preponderance of the evidence. However, subsequent to the *Embers* holding, significant developments occurred in the area of defamation law pursuant to both the federal and Ohio Constitutions. As a result of these developments and the propositions of law espoused by the appellants, we now re-examine the holding of the *Embers* court.

Any analysis of *Embers* or any other defamation action brought by a private individual must begin with the decision of the United States Supreme Court in *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323. In *Gertz,* the court held: "* * * [S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Id.* at 347. Following the direction of the Supreme Court, the *Embers* court stated: "This court has not enunciated a standard of review for defamation actions involving private individuals and the media. A majority of other jurisdictions when faced with this responsibility have set an ordinary negligence standard which must be shown by a preponderance of the evidence. * * *

"We are persuaded that the negligence standard of review is appropriate in this area. In cases involving defamation of private persons, where a prima facie showing of defamation is made by the plaintiff, the

question which a jury must determine by a preponderance of evidence is whether the defendant acted reasonably in attempting ·to discover the truth or falsity or defamatory character of the publication." *Id.* at 24-25.

Subsequent to the *Embers* decision, both this court and the United States Supreme Court have " 'struggl[ed] . . . to define the proper accommodation between the law of defamation and the freedoms of speech and press protected by the First Amendment.' " *Philadelphia Newspapers, Inc.* v. *Hepps* (1986), 475 U.S. \_\_\_, 89 L. Ed. 2d 783, 787. This court has recently reinforced the view that the First Amendment grants a unique protection to the press from the "chilling effect" of defamation litigation with its decisions in *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 25 OBR 302, 496 N.E. 2d 699, and *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 31 OBR 250, 509 N.E. 2d 399. In *Scott,* we also recognized that First Amendment freedoms under the federal Constitution are independently reinforced in Section 11, Article I of the Ohio Constitution, which states in pertinent part: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. * * *"

While the *Scott* court was determining whether a published statement was constitutionally protected opinion with regard to a public-figure plaintiff, the United States Supreme Court was establishing a heightened burden of proof for private-figure plaintiffs in defamation actions. In *Hepps, supra,* the plaintiffs brought a libel action against a Philadelphia newspaper based on a series of articles claiming that the plaintiffs had links to organized crime. The court held that "* * *

the common law's rule on falsity — that the defendant must bear the burden of proving truth — must * * * fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages." *Id.* at 793.

In the case *sub judice,* appellants invite this court to abandon the ordinary negligence standard of fault and overrule *Embers* in its entirety. Appellants urge the adoption of a professional negligence standard as provided by the Restatement of the Law 2d, Torts (1977) 227, Section 580(B), Comment *g*.[4] Adoption of the professional negligence standard would "* * * make clear that negligence in this context means a departure from standards which exist or ought to exist as standards of professional conduct in the news media industry." *Seegmiller* v. *KSL, Inc.* (Utah 1981), 626 P.2d 968, 976. In the alternative, appellants suggest that we adopt the gross irresponsibility standard established in *Chapadeau* v. *Utica Observer-Dispatch, Inc.* (1975), 38 N.Y. 2d 196, 379 N.Y. Supp. 2d 61, 341 N.E. 2d 569. In *Chapadeau,* the New York Court of Appeals held: "* * * [W]here the con-

tent of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition," *id.* at 199, 379 N.Y. Supp. 2d at 64, 341 N.E. 2d at 571, a private-figure plaintiff can recover if it is established "by a preponderance of the evidence that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Id.*

We decline to adopt either approach. "* * * When the speech is of public concern but the plaintiff is a private figure, * * * the Constitution still supplants the standards of the common law, but the Constitutional requirements are, in at least some of their range, less forbidding than when the plaintiff is a public figure and the speech is of public concern." *Hepps, supra,* at 792. Additionally, we heed the language of Section 11, Article I of the Ohio Constitution, which specifically states: "Every citizen may freely speak, write, and publish his sentiments on all subjects, *being responsible for the abuse of the right; * * *."* (Emphasis added.) Moreover, in bal-

---

[4] Comment *g* provides in part:

"* * * Putting the question in terms of conduct is to ask whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it.

"The defendant, if a professional disseminator of news, such as a newspaper, a magazine or broadcasting station, or an employee, such as a reporter, is held to the skill and experience normally possessed by members of that profession. * * * Customs and practices within the profession are relevant in applying the negligence standard, which is, to a substantial degree, set by the profession itself, though a custom is not controlling. * * *

"Evidence of custom within the profes-

sion of news dissemination would normally come from an expert who has been shown to be qualified on the subject. It may be testimony that the course of conduct followed by the defendant was or was not in accordance with recognized professional practices. * * * In the absence of expert testimony, however, the court should be cautious in permitting the doctrine of res ipsa loquitur to take the case to the jury and permit the jury, on the basis of its own lay inferences, to decide that the defendant must have been negligent because it published a false and defamatory communication. This could produce a form of strict liability de facto and thus circumvent the constitutional requirement of fault."

ancing the state's interest in compensating private figures for injury to their reputation against the constitutional interest of free speech, we are mindful that "the individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty.' " *Gertz, supra,* at 341, quoting from *Rosenblatt* v. *Baer* (1966), 383 U.S. 75, 92 (concurring opinion). With these principles in mind, we refuse to abandon the ordinary negligence standard. However, in light of our recent decisions, the Supreme Court's holding in *Hepps* and the facts presented by the instant action, we find that the standard of proof required should be heightened from the "preponderance of evidence" standard established in *Embers.*

In the case at bar, appellee has testified that *he* never violated any racing rules or regulations and that the rules cited in the article do not apply to him specifically. Additionally, appellee has maintained that appellant Phipps "made up" the rule concerning "betting at the window." Thus, appellee has claimed that any such article stating that *he* broke any racing rules or regulations is false. In his complaint, appellee stated that "* * * [t]he falsity of the * * * article would have been disclosed to defendants had defendants made any proper or reasonable inquiry concerning the facts published." At trial, appellants argued that while Phipps may have made his own interpretation of the racing rules, it was based upon his discussions with William Snyder, an attorney who was then the track's managing general partner, and with two former state racing officials. The only evidence introduced by appellee with regard to the rules and regulations was his own testimony reflecting *his* per-

sonal interpretation of the rules. The trial court agreed with appellants' counsel that appellee had "a weak case." A review of the record in this case not only raises questions as to whether appellee met his burden under *Hepps,* but further emphasizes the glaring deficiencies of a "preponderance of evidence" standard in establishing the liability of a publisher.

We find that the quantum of proof required should be more than a preponderance of the evidence. " 'In the normal civil suit where [the preponderance of the evidence] standard is employed, "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor." * * * In libel cases, however, we view an erroneous verdict for the plaintiff as most serious.' " *Gertz, supra,* at 366 (dissenting opinion), quoting from *Rosenbloom* v. *Metromedia, Inc.* (1971), 403 U.S. 29, 50.

Thus, in our attempt to achieve the proper balance between the protection to private persons from injuries to reputation and to provide adequate "breathing space" for freedom of the press and freedom of speech, we modify the *Embers* standard and hold that in private-figure defamation actions, where a prima facie showing of defamation is made by a plaintiff, the plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be

established." *Cross* v. *Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E. 2d 118, paragraph three of the syllabus. "* * * In a case presenting a configuration of speech and plaintiff like the one we face here, and where the scales are in such an uncertain balance, we believe that the Constitution requires us to tip them in favor of protecting true speech." *Hepps, supra,* at 793.

As a subsidiary issue, appellants contend that a heightened standard is required for proof of actual harm inflicted by defamatory falsehood. We do not find a great constitutional basis for this argument. Moreover, in *Gertz, supra,* the court stated at 350: "* * * Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by *competent evidence* concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury." (Emphasis added.) Thus, we do not believe that a heightened standard is required for proof of actual harm inflicted by defamatory falsehood.

Finally, appellants raise an issue concerning the scope of appellate review in private-figure cases. Appellants rely upon *Bose Corp.* v. *Consumers Union of U.S., Inc.* (1984), 466 U.S. 485, to assert that, in a case raising First Amendment issues, an appellate court must make an independent examination of the entire record in order to insure that the judgment of the trial court does not constitute a forbidden intrusion on the exercise of free expression. Indeed, this standard of review has traditionally been applied in cases where the trier of fact was required to make a finding of "actual malice." *St. Amant* v. *Thompson* (1968), 390 U.S. 737, 732-733; *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, 284-286. See, also, *Grau, supra,* at 89, 31 OBR at 254, 509 N.E. 2d at 404. In *Bose, supra,* the court held at 510: "The requirement of independent appellate review reiterated in *New York Times Co.* v. *Sullivan* is a rule of federal constitutional law."

However, in cases such as the one at bar, where actual malice need not be proven, we decline to embrace the independent review requirement. "* * * The negligence standard for compensatory damages that we have adopted is not a matter of governing federal constitutional law; rather, within the parameters authorized by *Gertz,* we have fixed the standard as a matter of state law. Accordingly, *Bose,* as well as the federal decisions on which it is based, is not controlling on this issue." *Gazette, Inc.* v. *Harris* (1985), 229 Va. 1, 20, 325 S.E. 2d 713, 728, certiorari denied (1985), 472 U.S. 1032. Therefore, we will continue to adhere to our traditional standard of review in defamation actions involving private-figure plaintiffs.

Accordingly, based upon all the foregoing, we reverse the judgment of the court of appeals and remand this cause to the court of common pleas for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

MOYER, C.J., and WRIGHT, J., concur.

DOUGLAS, J., concurs in judgment only.

SWEENEY, HOLMES and H. BROWN, JJ., dissent.

WRIGHT, J., concurring. I concur in Justice Locher's decision. We have recently substantially impacted the law of libel in *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 25 OBR 302, 496 N.E. 2d 699; *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 31 OBR 250, 509 N.E. 2d 399, and in this case. I am satisfied that we have achieved the correct balance between two paramount values in our society — the free flow of ideas and information versus the security of individuals in their reputations. The tension between these important considerations will continue; however, I would stress we have sanctioned neither malicious falsehoods concerning public officials nor careless calumny as to the private citizen. We *have* put in place stringent protection with respect to expression of opinion in *Scott*. We *have* allowed the freest type of reporting in the hurly-burly of an election campaign in *Grau*.

Current trends in the law of libel indicate a disquieting rise in the number of complaints in this area along with a startling increase in awards. This phenomenon can only lead to self-censorship by the media and inhibited debate on matters of public interest.

Today, we announce a rational, measured and workable test as to appropriate standards for reporting the daily course of events. In doing this, Justice Locher has retained the traditional standards of care but raised the threshold of proof to a sensible level. We have *not* extinguished defamation litigation, but the debate about the wisdom of the First Amendment appears to be over.

These accomplishments will be an important part of the legacy to be left by Justice Locher to this state's rule of law.

DOUGLAS, J., concurring in judgment only. For several reasons, I am unable to join in the analysis contained in today's plurality opinion. Therefore, I respectfully concur in judgment only.

I have expressed on previous occasions my concern that libel law must not be permitted to inhibit unduly the freedom of the media, guaranteed by the First Amendment, to pursue the news the public needs to know. See *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 254-256, 25 OBR 302, 312-313, 496 N.E. 2d 699, 709-710 (Douglas, J., concurring); *Grau* v. *Kleinschmidt* (1987), 31 Ohio St. 3d 84, 96-97, 31 OBR 250, 261, 509 N.E. 2d 399, 408 (Douglas, J., concurring). I have also declared my disapproval of the decision in *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, 9 OBR 115, 457 N.E. 2d 1164, and of the simple negligence standard adopted therein. *Scott, supra,* at 259, 25 OBR at 315, 496 N.E. 2d at 712. I believe that such a standard is insufficiently protective of the constitutionally guaranteed freedom of the press and is likely to have an undesirable chilling effect on journalistic decision-making. I am constrained to say that today's modification of *Embers* does little, if anything, to alleviate the problems engendered by that unfortunate decision.

The new standard announced by the plurality fails to enhance the protection of a free press in any meaningful way, despite its avowed intentions. *Embers* established a simple negligence standard, which the plurality concedes is inadequate. Today's opinion modifies the *Embers* standard only by heightening the plaintiff's burden of proof. A defamation plaintiff must now demonstrate the media defendant's negligence by "clear and convincing evidence." The plaintiff may still prevail by proving ordinary negligence, but must do so by a stricter quantum of proof. In my view,

this modification of *Embers* will mean very little in the litigation of private-figure defamation actions.

I am convinced that the average juror will not perceive any material distinction between proof by a preponderance (the *Embers* standard) and proof by clear and convincing evidence. This court's definition of "clear and convincing evidence" characterized such evidence as "* * * produc[ing] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross* v. *Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E. 2d 118, paragraph three of the syllabus. I firmly believe that many, if not most, jurors will regard any evidence that persuades them of the truth of a particular matter as "clear and convincing." The difference between this standard and the preponderance standard is too subtle to be meaningful to the average juror, and perhaps even to some judges. A jury inclined to hold a media defendant liable will not be prevented from doing so by the clear and convincing evidence standard.

I am persuaded that the approach outlined in Section 580B of the Restatement of the Law 2d, Torts (1977) 221-222, is much more effective in protecting a free press without foreclosing the rights of injured plaintiffs. That section provides:

"One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he

"(a) knows that the statement is false and that it defames the other,

"(b) acts in reckless disregard of these matters, or

"(c) acts negligently in failing to ascertain them."

Comment *g* to Section 580B expounds on the negligence standard contained in subsection (c) above: "The defendant, if a professional disseminator of news, such as a newspaper, a magazine or a broadcasting station, or an employee, such as a reporter, is held to the skill and experience normally possessed by members of that profession. * * * Customs and practices within the profession are relevant in applying the negligence standard, which is, to a substantial degree, set by the profession itself, though a custom is not controlling. * * *" *Id.* at 228.

Thus, the Restatement standard for media defendants is different from the standard applicable to non-media defendants in private-figure defamation actions. The media standard is very similar to that used in professional malpractice actions, *i.e.*, the defendant is held to a standard of conduct practiced in the profession generally. If the defendant is shown to have fallen below the industry's generally accepted level of skill and diligence in determining the truth or falsity of the alleged defamatory statement, the defendant may be liable to the plaintiff. I believe this approach would minimize the potential chilling effect of a simple negligence standard. A reporter or editor could forge ahead with a timely news story, confident of non-liability, as long as industry standards of diligence and skill are met.

In rejecting this sensible approach, the plurality hints that the Restatement standard is insufficiently protective of a private individual's right to be compensated for injury caused by defamation. I emphatically disagree. The Restatement formula strikes a healthy balance between a free press on the one hand and a safeguarded public on the other.

As an acceptable alternative to the plurality's test and to the Restatement standard set forth *supra*, I would be

receptive to adopting a standard holding a media defendant liable to a private-figure plaintiff if the defendant is shown to have published the defamatory statement with a gross or reckless disregard for its truth. If this were the standard, to be proved by clear and convincing evidence, most defamation actions would not automatically generate substantial jury questions necessitating a full-blown trial. Such, I fear, will be the case under the standard announced in today's majority opinion.

In any event, I would overrule *Embers* in its entirety. The Restatement standard is clearly the better approach. *Embers* is simply bad law, and it will remain bad law until we unequivocally overrule the case.

HERBERT R. BROWN, J., dissenting. I respectfully dissent from the plurality's decision to overrule the law as stated in *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, 9 OBR 115, 457 N.E. 2d 1164, and to replace it with a new rule requiring a defamed private figure to prove negligence on the part of the publisher by *clear and convincing evidence,* rather than by a preponderance of the evidence. I cannot agree with this unique proposition, which reaches well beyond the requirements of the First Amendment and provides additional protection to a publisher of defamatory falsehood, at the expense of an individual whose reputation has suffered perhaps irreparable injury.[5]

## I

The United States Supreme Court has said that, under the First Amendment, a publisher of defamatory falsehood may not be held liable to a private figure unless the publisher was at fault. *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323, 347; *Philadelphia Newspapers, Inc.* v. *Hepps* (1986), 475 U.S. ____, ____, 89 L. Ed. 2d 783, 794.

In *Gertz,* the court applied a delicate balancing test, weighing the important public interest in a free and uninhibited press against the "equally compelling need for judicial redress of libelous utterances." *Time, Inc.* v. *Firestone* (1975), 424 U.S. 448, 456. As to the weight to be assigned to the interest in a free press, the *Gertz* court emphasized, "there is no constitutional value in false statements of fact." 418 U.S. at 340. Neither an intentional lie nor a negligent factual misrepresentation makes the slightest contribution to the marketplace of ideas. Nonetheless, as the *Gertz* court explained, some erroneous statements of fact are inevitable in free debate; therefore, in order to prevent intolerable self-censorship, "[t]he First Amendment requires that we protect *some* falsehood in order to protect speech that matters." (Emphasis added.) *Id.* at 341.

To determine the *minimum* amount of falsehood which must be protected, the court looked to the weight to be given to an individual's interest in seeking judicial redress for the injury inflicted upon him or her by defamation. Emphasizing the fundamental nature of such interest, the court stated:

"[T]he individual's right to the protection of his own good name 'reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty. The protection of private personality,

---

[5] The plurality overlooks the basis for the law of defamation, to wit: the premise that the truth rarely, if ever, catches up with a lie. See *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323, 344, at fn. 9.

like the protection of life itself, is left primarily to the individual States under the Ninth and Tenth Amendments. But this does not mean that the right is entitled to any less recognition by this court as a basis of our constitutional system.' " *Id.* at 341. (Quoting *Rosenblatt* v. *Baer* [1966], 383 U.S. 75, 92 [Stewart, J., concurring].)[6]

The *Gertz* court distinguished between private figures, on the one hand, and public figures or public officials, on the other. *The difference deserves emphasis.* As the court explained:

"[W]e have no difficulty in distinguishing among defamation plaintiffs. The first remedy of any victim of defamation is self-help — using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation. Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater.

"More important than the likelihood that private individuals will lack effective opportunities for rebuttal, there is a compelling normative consideration underlying the distinction between public and private defamation plaintiffs. An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And society's interest in the officers of government is not strictly limited to the formal discharge of official duties. As the Court pointed out in *Garrison* v. *Louisiana,* 379 U.S., at 77, the public's interest extends to 'anything which might touch on an official's fitness for office . . . . Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.'

"Those classed as public figures stand in a similar position. Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues

---

[6] Observation of the importance of having a good name has not been limited to the courts. See, *e.g.,* the Book of Proverbs 22:1, which states: "A good name is rather to be chosen than great riches." See, also, Shakespeare, Othello, Act III, Scene iii, lines 158-164:

"Good name in man and woman, dear by lord,

"Is the immediate jewel of their souls:

"Who steals my purse steals trash; 'tis something, nothing,

" 'Twas mine, 'tis his, and has been slave to thousands;

"But he that filches from me my good name

"Robs me of that which not enriches him,

"And makes me poor indeed."

(Quoted in Smolla, Law of Defamation [1986], Section 1.01, at 1-2.)

186

involved. In either event, they invite attention and comment.

"Even if the foregoing generalities do not obtain in every instance, the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them. *No such assumption is justified with respect to a private individual.* He has not accepted public office or assumed an 'influential role in ordering society.' *Curtis Publishing Co.* v. *Butts,* 388 U.S., at 164 (Warren, C.J., concurring in result). He has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood. Thus, private individuals are not only more vulnerable to injury than public officials and public

figures; they are also more deserving of recovery." (Emphasis added.) 418 U.S. at 344-345.[7]

The *Gertz* court thus held that where a private figure has been defamed, the First Amendment protects the publisher of the defamatory falsehood only to the extent that its liability must be based on *fault,* rather than on strict liability. In so holding, the court made a sharp break from *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, and *Curtis Publishing Co.* v. *Butts* (1967), 388 U.S. 130, which hold that the First Amendment requires public figures and public officials to prove *actual malice* on the part of the publisher, and to do so by *clear and convincing evidence.*

Taking their cue from *Gertz,* a vast majority of states, including Ohio, have adopted a simple negligence standard in private figure defamation cases.[8]

---

[7] Similar reasoning was adopted by this court in *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 246, 25 OBR 302, 304, 496 N.E. 2d 699, 702.

[8] The following cases apparently adopt the simple negligence standard for their respective jurisdictions: *Mead Corp.* v. *Hicks* (Ala. 1983), 448 So. 2d 308; *Peagler* v. *Phoenix Newspapers, Inc.* (1977), 114 Ariz. 309, 560 P. 2d 1216; *Dodrill* v. *Arkansas Democrat Co.* (1979), 265 Ark. 628, 590 S.W. 2d 840, certiorari denied (1980), 444 U.S. 1076; *Corbett* v. *Register Publishing Co.* (Super. Ct. 1975), 33 Conn. Supp. 4, 356 A. 2d 472; *Re* v. *Gannett Co.* (Del. Super. Ct. 1984), 480 A. 2d 662, affirmed (Del. 1985), 496 A. 2d 553; *Miami Herald Publishing Co.* v. *Ane* (Fla. 1984), 458 So. 2d 239; *Triangle Publications, Inc.* v. *Chumley* (1984), 253 Ga. 179, 317 S.E. 2d 534; *Cahill* v. *Hawaiian Paradise Park Corp.* (1975), 56 Hawaii 522, 543 P. 2d 1356; *Troman* v. *Wood* (1975), 62 Ill. 2d 184, 340 N.E. 2d 292; *Gobin* v. *Globe Publishing Co.* (1975), 216 Kan. 223, 531 P. 2d 76; *McCall* v. *Courier-Journal &*

*Louisville Times Co.* (Ky. 1981), 623 S.W. 2d 882, certiorari denied (1982), 456 U.S. 975; *Wilson* v. *Capital City Press* (La. App. 1975), 315 So. 2d 393, certiorari denied specifically approving decision (1975), 320 So. 2d 203; *Jacron Sales Co.* v. *Sindorf* (1976), 276 Md. 580, 350 A. 2d 688; *Stone* v. *Essex County Newspapers, Inc.* (1975), 367 Mass. 849, 330 N.E. 2d 161; *Brewer* v. *Memphis Publishing Co.* (C.A. 5, 1980), 626 F. 2d 1238, certiorari denied (1981), 452 U.S. 962 (applying Mississippi law); *Hyde* v. *Columbia* (Mo. App. 1982), 637 S.W. 2d 251, certiorari denied (1983), 459 U.S. 1226; *Madison* v. *Yunker* (1978), 180 Mont. 54, 589 P. 2d 126; *McCusker* v. *Valley News* (1981), 121 N.H. 258, 428 A. 2d 493, certiorari denied (1981), 454 U.S. 1017; *Marchiondo* v. *Brown* (1982), 98 N.M. 394, 649 P. 2d 462; *Walters* v. *Sanford Herald, Inc.* (1976), 31 N.C. App. 233, 228 S.E. 2d 766; *Martin* v. *Griffin Television, Inc.* (Okla. 1976), 549 P. 2d 85; *Bank of Oregon* v. *Independent News, Inc.* (1983), 65 Ore. App. 29, 670 P. 2d 616, affirmed (1985), 298 Ore. 434, 693 P. 2d 35, certiorari denied (1985),

The Restatement of Torts 2d has adopted this position as well.[9] The states that have adopted a negligence standard have generally concluded, as in *Gertz,* that such standard strikes the proper balance between the protection of a private figure's reputation and the need for free speech and a free press. See, *e.g., Gazette, Inc.* v. *Harris* (1985), 229 Va. 1, 15, 325 S.E. 2d 713, 725 ("a negligence test strikes a proper balance between the rights of the news media and the rights of private individuals"); *Martin* v. *Griffin Television, Inc.* (Okla. 1976), 549 P. 2d 85, 92 (actual malice standard does not adequately accommodate the private figure's interest in protecting his reputation); *Foster* v. *Laredo Newspapers, Inc.* (Tex. 1976), 541 S.W. 2d 809, 819-820 (negligence standard achieves a fair balance between competing interests). As the Supreme Court of Florida recently held: "We are committed to robust and open debate, but find that *the first amendment adequately provides the necessary protection.* * * * We find that reasonable care is not too much to expect and that it encourages responsible reporting while allowing breathing room for mistakes to occur." (Emphasis added.) *Miami Herald Publishing Co.* v. *Ane* (Fla. 1984), 458 So. 2d 239, 242.

## II

Although a few state courts have opted for a standard greater than simple negligence for private figure cases *involving issues of public concern,*[10] *nowhere except in today's plurality*

---

474 U.S. 826; *Mathis* v. *Philadelphia Newspapers, Inc.* (E.D. Pa. 1978), 455 F. Supp. 406 (applying Pennsylvania law); *DeCarvalho* v. *daSilva* (R.I. 1980), 414 A. 2d 806; *Jones* v. *Sun Publishing Co.* (1982), 278 S.C. 12, 292 S.E. 2d 23, certiorari denied (1982), 459 U.S. 944; *Memphis Publishing Co.* v. *Nichols* (Tenn. 1978), 569 S.W. 2d 412; *Foster* v. *Laredo Newspapers, Inc.* (Tex. 1976), 451 S.W. 2d 809, certiorari denied (1977), 429 U.S. 1123; *Seegmiller* v. *KSL, Inc.* (Utah 1981), 626 P. 2d 968; *Colombo* v. *Times-Argus Assn., Inc.* (1977), 135 Vt. 454, 380 A. 2d 80; *Gazette, Inc.* v. *Harris* (1985), 229 Va. 1, 325 S.E. 2d 713; *Taskett* v. *KING Broadcasting Co.* (1976), 86 Wash. 2d 439, 546 P. 2d 81; *Crump* v. *Beckley Newspapers, Inc.* (W. Va. 1983), 320 S.E. 2d 70; *Denny* v. *Mertz* (1982), 106 Wis. 2d 636, 318 N.W. 2d 141, certiorari denied (1982), 459 U.S. 883; *Adams* v. *Frontier Broadcasting Co.* (Wyo. 1976), 555 P. 2d 556; *Phillips* v. *Evening Star Newspaper Co.* (D.C. 1980), 424 A. 2d 78, certiorari denied (1981), 451 U.S. 989.

[9] Section 580B of the Restatement of the Law 2d, Torts (1977) 221, provides:

"One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he

"(a) knows that the statement is false and that it defames the other,

"(b) acts in reckless disregard of these matters, or

"(c) *acts negligently in failing to ascertain them.*" (Emphasis added.)

[10] Alaska, Colorado, Indiana and Michigan apparently require a showing of actual malice by clear and convincing evidence where the subject matter is of public concern, regardless of the status of the defamed plaintiff. See *Gay* v. *Williams* (D. Alaska 1979), 486 F. Supp. 12 (applying Alaska law) (but, see, *Green* v. *Northern Publishing Co.* [Alaska 1982], 655 P. 2d 736, certiorari denied [1983], 463 U.S. 1208); *Diversified Mgmt., Inc.* v. *Denver Post, Inc.* (Colo. 1982), 653 P. 2d 1103, 1106; *Aafco Heating & Air Conditioning Co.* v. *Northwest Publications, Inc.* (1974), 162 Ind. App. 671, 679, 321 N.E. 2d 580, 585-586, certiorari denied (1976), 424 U.S. 913; *Dienes* v. *Associated Newspapers, Inc.*

*opinion* has a court required a defamed private figure to prove negligence by anything more than an ordinary preponderance of the evidence.[11] The plurality does not even limit its decision to cases involving matters of public concern; instead, it blindly holds that private figures must bear the burden of clear and convincing proof in *all* cases, no matter how private the nature of the defamatory statement's subject matter.

The plurality justifies its exercise in rewriting the law by a claim that the law has changed "[s]ubsequent to the *Embers* decision." The claim has no merit. *Philadelphia Newspapers, Inc.* v. *Hepps, supra,* the principal authority cited by the plurality, reaffirms the *Gertz* distinction between public and private figures and contains nothing to justify the imposition of a burden of clear and convincing proof upon a private-figure plaintiff. Neither *Hepps* nor any other case cited by the plurality will relieve the plurality from taking responsibility for abandoning the well-settled standard of proof in private-figure defamation cases.

The ordinary preponderance standard so naturally follows from an adoption of negligence as the basis for liability that only rarely has a court even thought of mentioning the applicable burden of proof.[12] Apparently, most courts regard the application of a preponderance of the evidence standard as obvious.[13] As Comment *j* to Section 580B of the Restatement of the Law 2d, Torts (1977) 229, provides:

"* * * There has been no indication that proof of fault in the ordinary defamation case must meet the unusual standard of 'clear and convincing proof' that the Supreme Court has held to be required in showing knowledge or reckless disregard as to falsity in an action by a public official or a public figure. * * * It seems doubtful that this requirement will be imposed in the application of the rule set forth in this Section."

The First Amendment does not saddle a defamed private figure with the burden of clear and convincing proof. As Justice Brennan indicated in his dissenting opinion in *Gertz, supra,* "* * * in contrast to proof by clear and convincing evidence required under the *New York Times* test, *the burden of*

---

(1984), 137 Mich. App. 272, 358 N.W. 2d 562. New York has opted for a hybrid "gross irresponsibility" standard for private figures where the defamatory matter is "arguably within the sphere of legitimate public concern." *Chapadeau* v. *Utica Observer-Dispatch, Inc.* (1975), 38 N.Y. 2d 196, 199, 379 N.Y. Supp. 2d 61, 64, 341 N.E. 2d 569, 571.

[11] In *Chapadeau, supra,* the New York Court of Appeals held that a preponderance-of-the-evidence standard applies to its "gross irresponsibility" test.

[12] Other than *Embers, supra,* which the plurality today discards, research has uncovered only Virginia law as *explicitly* indicating that a private-figure plaintiff must prove negligence by a preponderance of the evidence. See *Gazette, Inc.* v. *Harris, supra,* at 725.

[13] See, *e.g., Taskett* v. *KING Broadcasting Co., supra,* at 445, 546 P. 2d at 85 (private figure must make "a showing" of negligence); *Foster* v. *Laredo Newspapers, Inc., supra,* at 819 (a private individual may recover upon "a showing" that the publisher knew or should have known that the statement was false). See, also, Sack, Libel, Slander, and Related Problems (1980), at 252, wherein the author states that "[t]he negligence test may broadly be restated as permitting recovery on *a showing* that in publishing a defamatory falsehood the defendant knew, or in the exercise of reasonable care should have known, that the statement was false or would create a false impression in some material respect." (Emphasis added.)

*proof for reasonable care will doubtless be the preponderance of the evidence."* (Emphasis added.) *Id.* at 366.

Surely the reasons why no other courts have embraced the rule adopted in today's plurality opinion are the same as those leading the vast majority of courts to adopt negligence as the basis for liability in private figure cases: (1) The value of defamatory falsehood in the marketplace of ideas is zero; (2) an individual's interest in his or her reputation is great; and (3) a private figure neither has the resources necessary to rebut the false allegations nor can be said to have "assumed the risk" of them. On the other hand, where the acts or character of a public official or public figure are involved, the scrutiny of the press (so long as it is not motivated by actual malice) serves the public weal to a degree that can hardly be overvalued.

Even with a private figure, *some* falsehood must be protected in order to avoid a "chilling effect" on speech that matters. However, requiring a private figure to prove negligence by a preponderance of the evidence is the best rule because it offers equal protection to the publisher and to the good name of the private figure. Where a false publication defames a private figure, any increase in *either* the required degree of culpability of the publisher, or the burden of proving such culpability, is an unnecessary protection of that falsity. Worse, such needless protection comes at the expense of perhaps an individual's most basic asset — his or her own good name.

The plurality has lost sight of the notion that freedom of the press has as its *raison d'etre* the public weal, not a grant of immunity to negligent publishers. We deal here not with John Peter Zenger against the Governor and the state of New York, or a publisher matched against king or dictator. Rather, the dispute is between a major, powerful, daily newspaper and an individual who bets on horse races. The story which was published would have lost none of its value if the plaintiff had not been identified. In such a confrontation I am not persuaded that the press should be accorded any greater protection than a doctor, a lawyer, the driver of a motor vehicle or anyone else whom society holds accountable for the consequences of negligent behavior.

Having said as much, I concede that the proof of defamation in this case is slim. But that is not the basis upon which the plurality reaches its decision.

Because I believe *Embers* strikes the delicate balance between freedom of the press and the rights of a private figure at precisely the right point, I must respectfully dissent from the plurality's decision to overrule it. The jury, upon a proper charge, found a defamation and made an award of damage. On appeal, the judgment of the trial court was affirmed. I would not distort the law of defamation in order to reverse the judgments below.

SWEENEY and HOLMES, JJ., concur in the foregoing dissenting opinion.