JOURNAL ENTRY AND OPINION
Appellant Josie Williams ("mother") appeals the juvenile court's award of permanent custody of her son Ezekiel Jones to the county. The juvenile court granted the Cuyahoga County Department of Children and Family Services' ("county") motion for emergency temporary custody of 11-year-old Ezekiel Jones ("child") in early 1998 after his mother was arrested for domestic violence on Christmas day of 1997. Nearly two years later the court granted permanent custody of Ezekiel to the county.
Mother has two other sons. Both are high school graduates, one living in Summit County and one in Medina County. She relinquished guardianship of these two children so that they could attend out-of-town high schools, but retained legal custody. She testified, moreover, that she was an active part of their lives.
Prior to being placed in emergency custody, Ezekiel lived with his mother and her boyfriend.[1] The boyfriend is on probation for drug related crimes. The boyfriend did have a significant part in the day-to-day care of the child. Mother, who has been through several drug treatment programs, admitted to relapsing prior to the Christmas day incident.
When the child was four years old, he was sent to live with an aunt in Las Vegas because his mother was in jail for charges related to car theft and for food stamp fraud. He lived with his aunt for three or four years before returning to his mother.
Mother testified that on the day of the domestic violence incident she had planned to take the child to Akron for Christmas day, but when she returned from the store that morning, her boyfriend locked the door and would not let her in. She testified that she broke a window to get into the house. She was arrested on a domestic violence charge for breaking the window and was held in jail for three days, but was never formally charged.
After the county received temporary custody of the child, the county social worker prepared a case plan for mother to follow for reuniting them. The case plan, which the social worker discussed with mother, included drug assessment and screenings, parenting classes, and the establishment of permanent and safe housing. Domestic violence counseling and a psychological exam for mother were later added.
The social worker testified at the hearing that mother did not successfully complete the case plan. She observed that mother did not cooperate with the drug assessment: that is, she did not attend her first two drug assessment appointments, did not complete her third appointment, and did not attend the follow-up appointment. She finally went to another assessment in October 1999, a week before the permanent custody hearing. Social worker also testified that mother never completed the domestic violence program and never had the psychological evaluation performed. The social worker also explained that although mother technically completed the parenting class she did not complete it successfully, because she attended so sporadically that it took her ten months to finish a sixteen-week program. Furthermore, mother had not held a full-time job after child was removed from her custody. Because she did not maintain regular employment, the social worker said, mother failed to establish safe and stable housing. In addition, mother continued to live with her boyfriend. The social worker deemed the fact that mother did not have her own separate home a failure to establish a home.
Mother testified, on the other hand, that she had made a good faith effort to comply with the case plan and provided reasons for failing to complete it. She believed she had successfully completed the drug assessment and had one drug test. She explained that the first domestic violence program the social worker referred her to was held in the morning, when she was working or looking for work. The second program the social worker referred her to cost $350, which she could not afford because she made only $6.00 an hour. The social worker then suggested the Free Clinic's domestic violence program. Mother testified that she applied to the Free Clinic's program the month before the permanent custody hearing, was put on a waiting list, and was due to start classes within a few weeks. It was her understanding that the social worker would set up the domestic violence program for her. Although mother stated she had signed up at the Free Clinic for domestic violence counseling, the social worker testified that when she contacted the Free Clinic the worker who handled the domestic violence program there had never heard of mother.
Mother also testified she had received a certificate for completing the parenting class but had not been able to attend it on a regular basis because she was visiting her other sons on the evenings the classes were held. She also explained she missed some of the parenting classes because she was depressed. Disagreeing that she had failed to establish a permanent home for the child, mother explained that her name, along with her boyfriend's, was on the lease for the apartment she shared with her boyfriend. She testified that the rent was $450 per month and that she paid half the rent when she could, as well as the utilities when she had the money.
The child is now thirteen years old and has adjusted well to his foster home, where he has lived for nearly three years. His foster mother has expressed a desire to adopt him. Mother petitioned the court to stay execution of termination of custody pending this appeal, and the trial court denied her petition.
Appellant asserts two assignments of error. The first assignment of error states
 I. CCDCFS [COUNTY] DID NOT PROVE ITS CASE BY CLEAR AND CONVINCING EVIDENCE.
The trial court's award of permanent custody to the county, which decision must be based on clear and convincing evidence, will be affirmed unless the court acted in an arbitrary, unreasonable, or capricious manner. In re: Destiny Vactor (Oct. 5, 2000), Cuyahoga App. No. 66266, unreported, 2000 Ohio App. LEXIS 4650 at *6. R.C. 2151.414(B)[2]
requires the trial court to determine, "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that [one] of the following apply: (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents * * *." This court clarified that
 "clear and convincing evidence" as required by R.C. 2151.414 is defined as that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. In re Awkal (1994), 95 Ohio App.3d 309, 315, 642 N.E.2d 424, citing Lansdowne v. Beacon Journal Publishing Co. (1987), 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979.
In re: Matthew Vinci (Sept. 3, 1998) Cuyahoga App. No. 73043, unreported, 1998 Ohio App. LEXIS 4100 at *9.
A. First Prong: Best Interest of the Child
The factors for determining what is in the best interest of a child are listed in R.C. 2151.414(D):
 * * * [t]he court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard to the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Because the child's foster mother has expressed her desire to adopt him, the first factor weighs in favor of permanent custody. The guardianad litem's report indicates, however, that the child "expressed his desire to ultimately be reunited with his mother and become a family again." In fact, the guardian observed "the child was willing to say whatever is necessary for him to be reunited with his mother." GAL report at 5. The child admittedly has a bond with his natural mother, but he also is attached to his foster mother. The foster mother, in fact, "treats Ezekiel as if he were her own son." GAL report at 5. Because his brothers have lived away from home for one and four years respectively, his attachment to them is limited. His mother's boyfriend has eight children by three different women, and the child has spent some time with several of those children who live in town. However, nothing in the record indicates a strong attachment between the child and these other children.
There are other factors less favorable to the mother's custody, for example, the custodial history of the child. This child has lived with his mother for nine of his thirteen years. The GAL's report stated, however, that the boyfriend with whom mother and child had lived "was on probation for drug related charges, prior to the agency obtaining temporary custody of the child, [and boyfriend] often assumed the role of caretaker of Ezekiel in his mother's absence." GAL report at 3. Mother continues to live with this man.
The guardian believed "[t]he child is clearly at an age to benefit from adoption. Moreover, the child is at a point in his life where a safe and stable living environment, one in which illegal activities and/or self-abusive behaviors are absent, is essential to his long-term development." Id.
The key factor here is the living environment. The foster mother is providing a safe, stable home for the child, whereas the mother has presented little evidence that she would be able to provide such a home. After weighing all the factors required by R.C. 2151.414(D), we conclude the trial court's decision to award permanent custody to the county was not arbitrary, unreasonable or capricious.
B. Second Prong: Placement with Parent Within a Reasonable Periodof Time
The trial court must also determine by clear and convincing evidence that the child cannot be placed with the parent within a reasonable period of time. R.C. 2151.414(E) states:
 In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with his parents, the court shall consider all the relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. [Emphasis added.]
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by * * * actions showing an unwillingness to provide an adequate permanent home for the child * * *.
Ezekiel was initially removed from his mother's home because of her domestic violence arrest. Failing to attend domestic violence counseling sessions, mother thereby demonstrated a failure to "remedy the conditions causing the child to be placed outside his home." R.C. 2151.414(E)(1). Also significant was her inability to provide housing independently.
The evidence also showed that mother had relapsed into her drug problem.[3] Although her reunification case plan required her to complete drug testing and assessment, mother attended only two drug assessments over the nearly two years after the case plan was implemented and never successfully completed either of them. The trial court easily could find that mother's failure to comply with the drug testing specified in the case plan was clear and convincing evidence of her failure to use the rehabilitative resources available to her.
Again, the mother's sporadic attendance at the required parenting classes also provides evidence that she did not avail herself of the resources provided to help her establish a safe and stable home for the child. In addition, the mother failed to undergo the psychological exam which the case plan required. Mother has presented multiple reasons for failing to comply with the case plan. However, her many explanations must be considered along with evidence that the Free Clinic had no record of her registration, which she claimed to have arranged.
The trial court is in the best position, moreover, to assess the veracity of the parties, to choose the more credible evidence, and to determine the outcome of the hearing. Nothing in the record shows the trial court's decision was arbitrary, unreasonable or capricious. There is sufficiently clear and convincing evidence to support the court's decision that it is in the best interest of the child to be placed in permanent custody so he can be adopted into a stable and secure home. Appellant's first assignment of error is overruled.
Appellant's second assignment of error states
 II. THE APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.
The same standard for determining ineffective assistance of counsel is used for both criminal and custody cases. See In Matter of Andre Gray
(Apr. 20, 2000), Cuyahoga App. Nos. 75984, 75985, unreported, 2000 Ohio App. LEXIS 1734, at *4-5.
 To prevail on a claim of ineffective assistance of counsel, an appellant must show that her counsel's performance fell below an objective standard of reasonable professional competence and that there is a reasonable probability that, but for the attorney's unprofessional error, the result of the proceeding would have been otherwise. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Generally, the failure to object or move to strike an answer falls within the realm of trial tactics and does not establish ineffective assistance of counsel. State v. Hunt (1984), 20 Ohio App.3d 310, 486 N.E.2d 108.
Id. at *6.
Mother states that because her attorney did not object to alleged hearsay testimony from the social worker, her case was irreparably harmed. The social worker's testimony in question consisted of a discussion regarding mother's appointment for drug assessment which had occurred the previous week. The challenged testimony follows:
 Q. Did there ever come a time when [mother] did show up for the assessment?
A. Yes, October the 8th, which was last Friday.
Q. Did she complete the assessment?
A. No.
Q. Were you present at the assessment?
A. Yes.
Q. During the assessment? A. Yes.
Q. Why wasn't it completed?
 A. The representative thought that the drug assessment — he didn't feel that she was giving truthful answers, so he didn't feel that they would get a truthful assessment, so it wasn't completed.
 Q. You were present during this assessment. What — to the best of your knowledge, what was not truthful? What was the problem?
 A. The assessor felt that when he asked — addressed her about drug issues that she was denying or she wasn't giving truthful answers about her last time using.
Appellant's Brief at 13-14, quoting Transcript at 8-9.
Appellant argues that this testimony was highly prejudicial to her, because she was portrayed as being untruthful. She also points out that the social worker herself did not express a belief that mother was being untruthful.
In order to prevail in her argument, mother must show that her case was irreparably harmed by the allegedly objectionable testimony. In her brief, mother gives no indication of how this testimony hurt her case, except to say that it portrayed her as being untruthful. However, the court's judgment entry makes no reference to lack of truthfulness as a reason for termination of the mother's custody rights. The court's reasons for terminating custody were
 1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents [sic] to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
 2) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by their actions showing an unwillingness to provide an adequate home for the child.
Judgment Entry at 1.
A review of the transcript shows that mother's counsel did a competent job of eliciting testimony helpful to his client's case. To suggest successful parenting by mother, he brought out that mother's other two sons were both high school graduates. He established that the social worker had never seen mother's current home to assess its condition. He elicited testimony that the social worker had never observed the mother and child interacting and, therefore, could not address the quality of their relationship.He also clarified that the domestic violence charge did not involve the child, and involved only minor property damage, not harm to a person.
Unfortunately, such testimony was not enough to overcome mother's failure to cooperate with the case plan, or the guardian ad litem's
observation in his report that "when he visited the mother, she exhibited a `jittery' disposition, had glossy eyes and exhibited other behaviors consistent with an apparent drug addiction." GAL's report at 4.
Thus even if the testimony in question were hearsay, appellant has failed to demonstrate any damage to her case as a result of the testimony. Appellant's second assignment of error is overruled.
The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J., and JOSEPH J. NAHRA* J., CONCUR.
* Judge Joseph J. Nahra, Retired Judge, of the Eighth District Court of Appeals, sitting by assignment.
[1] His father, who has had no involvement in the child's life, did not participate in these hearings.
[2] This statute was amended on October 29, 1999, after the date of the hearing.
[3] See transcript of Mar. 12, 1998 hearing at 3 through 6 in which mother admits to relapsing in her drug problem following treatment.