[Cite as *In re Q.S.*, 2022-Ohio-2779.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE  Q.S.                                     :

A Minor Child                                   :

[Appeal by Mother]                              :

No. 111251

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  August 11, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 19913495

*Appearances:*

Robert C. Aldridge, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, for *appellee*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant, the mother of Q.S., a minor child, appeals the juvenile court's award of permanent custody of Q.S. to the Cuyahoga County Division of Children and Family Services ("the Agency").  We find the juvenile court's determination to terminate appellant's ("Mother") parental rights and award

permanent custody to the Agency was based on competent, credible evidence and that the juvenile court did not abuse its discretion in determining that permanent custody was in Q.S.'s best interests. Accordingly, we affirm the judgment of the juvenile court.

## I. STATEMENT OF THE CASE

### A. Procedural history

{¶ 2} On October 31, 2019, the Agency filed a complaint alleging Q.S. was a dependent child. The juvenile court granted temporary custody of Q.S. to the Agency. Later, an adjudicatory hearing was held and Q.S. was placed in the temporary custody of the Agency. The temporary custody was extended after a hearing. On May 21, 2020, the Agency filed a motion seeking permanent custody. On November 20, 2020, Mother filed a motion to extend temporary custody. On March 16, 2021, a trial was held. After trial, the trial court terminated Mother's parental rights and placed Q.S. in the permanent custody of the Agency.

### B. Facts presented at trial

{¶ 3} In seeking permanent custody, the Agency called Michelle McCracken, a social worker assigned to Q.S.'s family from October 2019 through February 2021, and Renae Cameran, a social worker assigned to Q.S.'s family from February 2021 through December 2021 to testify. It further called Mother's mental health counselor, James Ventura. In addition to these witnesses, the Agency introduced exhibits for the court to consider. For her part, Mother testified at the trial as well as the guardian ad litem.

{¶ 4} Testimony at the trial revealed that the Agency became aware of the family when Mother was in the hospital following an incident of domestic violence during the latter stages of her pregnancy. The Agency sought temporary custody of Q.S. shortly after his birth due to concerns of domestic violence, parenting issues, mental health issues regarding Mother, adequate housing, and a concern for Mother's ability to provide for the basic needs of her child. At the temporary custody hearing, stipulations were made, temporary custody was established, and a case plan was put in place with the goal of reunification of the family. Further, Mother stipulated that she "must exercise appropriate judgment concerning the care of [Q.S.]." that she "displays symptoms of mental health disorder," and that she "must follow the recommendations of her Juvenile Court clinic mental health assessment." A case plan was put in place to facilitate the goal of reunification. The plan required Mother to address her mental health, complete domestic violence counseling, obtain safe and appropriate housing, and demonstrate the ability to provide safe and adequate care for Q.S. Mother completed domestic violence counseling and a parenting class as part of the plan.

{¶ 5} Social worker McCracken testified that the juvenile court ordered a mental health assessment of Mother. McCracken received the assessment and provided a list of mental health providers that Mother could use to address the specific therapies recommended in the assessment. McCracken testified that Mother and her counselor Ventura indicated Mother did not seek to have the issues identified by the mental health assessment addressed but instead sought

independent assessments. Thereafter, Mother found Ventura who assessed her and began counseling to address issues not identified within the initial assessment. Further, Ventura admitted that he received no collateral information regarding Mother's prior mental health assessments or diagnoses. From the witness testimony and exhibits admitted, Mother gave different information about herself when having her mental health assessed. Further, although Mother did engage in counseling regarding her mental health, it was not continuous.

{¶ 6} As to visitation, testimony established that visitation was available to Mother throughout the pendency of the case, albeit video visitation was in place at times. McCracken testified that Mother's history of visitation did not progress and was sporadic. She noted that Mother focused on the Agency's process and directed her attention to McCracken and Agency involvement. Additional resources, Support Visitation and Nurturing Parenting Programs, were obtained to help Mother during visits, but Cameron testified that she did not observe a bond develop between Mother and Q.S., noting that she "never observed or noticed [Mother] to have a change of behavior that related to any of the services that she had been provided." Further testimony established that due to Mother's actions and attitude to Q.S.'s caregiver, the location for visits was moved to a social services agency location. During visits there, Mother exhibited aggressive behavior and visits were moved to an Agency building because that location had security on site. The visitation over the two-year involvement by the Agency never progressed to unsupervised visits.

**{¶ 7}** Cameron testified as to Mother's housing and reported that Mother lacked adequate housing at the time of the hearing because she was living in an extended stay motel due to a fire at her previous apartment. Cameron stated that Mother's prior apartment lacked adequate space to accommodate a child. Mother testified that she was planning to obtain an apartment at the start of the new year. Mother further testified that she would be starting work with health insurance available and further said that over the past two years, she had worked on and off.

**{¶ 8}** As to Q.S.'s present caregiver, testimony indicated that he had been with the same caregiver from the start of the Agency's involvement and that Q.S. has bonded with his caregiver. Further, the Agency received little information regarding placing Q.S. with a relative. Q.S. was too young to express his wishes regarding custody, however the guardian ad litem recommended that the trial court grant the motion for permanent custody.

### C. Decision granting permanent custody to the Agency

### 1. Findings of Fact

**{¶ 9}** The juvenile court found that Q.S. was removed from Mother's care "due to concerns involving mother's mental health, parenting skills, housing, and domestic violence occurring between mother and father." The juvenile court further found that although Mother completed a portion of the case plan implemented, she did not show "benefit or progress during the time Support Visitation and Nurturing Parenting Programs were being implemented."

{¶ 10} Further, the juvenile court found "mother has displayed erratic, explosive, and aggressive behaviors to Agency personnel throughout the pendency of this matter" and that she "sporadically engaged in mental health services." The juvenile court noted that mother completed three mental health assessments and then independently engaged a therapist for treatment for an adjustment disorder, not dialectic behavior therapy or cognitive behavior therapy as recommended by the court's mental health assessment.

{¶ 11} The juvenile court determined that mother had not bonded with the child over the period that Q.S. was in custody of the agency and that the child's demeanor with Mother during visits was "guarded and not outgoing" in contrast to the behavior noted when Q.S. was with the caregiver, with whom the child bonded and had been under the care of since the initial removal.[1] It also found that Mother had three other children, none in her care; one child was committed to the legal custody of a relative and subsequently turned eighteen. The other two children were under the guardianship of an interested individual through the Cuyahoga County Probate Court.

---

[1] The trial court found that Q.S. is not a member of a federally recognized Indian tribe, is not eligible for membership in a federally recognized Indian tribe as the biological child of a member of a federally recognized tribe, and is not in the custody of an Indian custodian. This determination was first made in this case in the November 21, 2019 Magistrate's order granting temporary custody. Mother did not object to this finding to the trial court, nor did the guardian ad litem raise any objection to this finding on behalf of Q.S. Mother did not raise any objection to this finding in her arguments on appeal.

**2. Conclusions of Law**

{¶ 12} The juvenile court terminated Mother's parental rights and granted permanent custody of Q.S. to the Agency. In so ordering, the juvenile court found that Q.S. was in the custody of a public children services agency or private agency for 12 or more months of a consecutive 22-month period and that the child was abandoned by the father and that return to Mother's care would be contrary to Q.S.'s best interest. It found:

> Relevant services provided to the mother include referrals for specific mental health treatment, resources for visitation supervision and parenting, and resources for domestic violence counseling, Mother has been inconsistent with her mental health treatment, and while mother has participated in some parenting resources, mother has not demonstrated these services have benefitted her ability to adequately care for the child. The child's father was incarcerated during the pendency of this case.

The juvenile court determined:

> Upon considering the interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster parents; the wishes of the child; the custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and, the report of the Guardian ad Litem, the Court finds by clear and convincing evidence that a grant of permanent custody is in the best interests of the child and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

The juvenile court also found that Mother "has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."

## II. Law and Argument

### A. Assignments of error

{¶ 13} Mother raises four assignments of error, which read as follows:

ASSIGNMENT OF ERROR NO. 1

The trial court's termination of Mother's parental rights was not supported by clear and convincing evidence and was otherwise against the manifest weight of the evidence.

ASSIGNMENT OF ERROR NO. 2

The trial court erred in finding that the Cuyahoga County Department of Children and Family Services had proven the allegations in its motion by clear and convincing evidence.

ASSIGNMENT OF ERROR NO. 3

The trial court erred in finding [in] its finding of facts that Mother had not shown progress while enrolled in parenting programs, has been sporadic with her mental health treatment, and has not demonstrated an ability to provide safe and adequate care for the child.

ASSIGNMENT OF ERROR NO. 4

The trial court erred by giving too much weight to the testimony of the CCDCFS case workers when there were several inconsistencies in testimony and a documented history of an antagonistic relationship between the case worker and Mother.

{¶ 14} Mother argues in her first assignment of error that the cumulative effect of the errors identified in her remaining assignments of error shows that the juvenile court's decision was not sustained by clear and convincing evidence. In her

second assignment of error, Mother argues that the evidence produced at the hearing was insufficient to meet the burden to grant permanent custody. She argues that the evidence showed she was financially able to support Q.S. and had the ability to obtain suitable housing. Further, she argues that although the motion for temporary custody was brought because of two concerns, domestic violence and her mental health, evidence that she complied with the case plan and did receive mental health services favored the denial of the motion but that the court considered other issues in its judgment, including her housing, finances, and ability to obtain health insurance. As such, she argues the evidence on issues outside the initial complaint should have weighed in her favor. She also argues that because of the Covid 19 pandemic and that visitation was done via Zoom, her access to Q.S. was limited by the visitation schedules and the length of time the case was pending and that her ability to bond with Q.S. was hindered.

{¶ 15} Mother argues in the third and fourth assignments of error that the juvenile court erred by finding she had not shown progress while enrolled in parenting programs, was sporadic with mental health treatment, and did not demonstrate an ability to provide safe and adequate care for Q.S. She further argues the juvenile court gave too much weight to the testimony of Agency case workers because inconsistencies existed in the workers' testimony and there was evidence of an antagonistic relationship between Mother and one case worker.

{¶ 16} The Agency argues that the trial court properly considered all relevant factors in granting permanent custody and that the findings made by the juvenile

court were based on competent, credible evidence. As such, the Agency concludes that the judgment should be affirmed. Because Mother has presented assignments of error that are interrelated and dependent upon each other, we will address them together in our review of the order granting permanent custody.

### B. Applicable law and standards of review

{¶ 17} R.C. 2151.414(B) provides that permanent custody of a child may be awarded to a children services agency if the court finds, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody of the child to the agency, and (2) that any of the conditions listed in R.C. 2151.414(B)(1)(a)-(e) apply. A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established. *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919; R.C. 2151.414(B)(1). This court has stated clear and convincing evidence is

> that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994), fn. 2, citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 512 N.E.2d 979 (1987).

{¶ 18} R.C. 2151.414(D)(1) provides the factors to consider when determining the best interests of a child; it reads:

(a)     The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)     The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)     The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)     Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 19} When determining the best interest of a child pursuant to R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors.  There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶ 20} If it is in the best interests of a child that permanent custody be granted, R.C. 2151.414(B)(1)(a)-(e) provides, in pertinent part, conditions upon which the juvenile court may grant permanent custody:

(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

* * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**C. The juvenile court's grant of permanent custody to the Agency was based on credible, competent evidence, was not against the manifest weight of the evidence, and did not constitute an abuse of the juvenile court's discretion**

{¶ 21} Throughout her assignments of error, Mother contends that the evidence presented to the juvenile court was contradictory and insufficient to support the award of permanent custody of Q.S. to the Agency. In this case, the juvenile court found that Q.S.'s best interests were met by awarding permanent custody to the Agency. Its order demonstrates that it considered the relevant factors pursuant to R.C. 2151.414(D).

{¶ 22} Under R.C. 2151.414(D)(1)(a), the record contained evidence that Q.S. had a strong relationship with his caregivers and the juvenile court specifically found that Q.S. "is bonded with the caregiver." R.C. 2151.414(D)(1)(b) requires consideration of the child's wishes; however, Q.S. was too young to meaningfully inform the court. The court could consider the opinion of the GAL in considering this factor. *See In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45 ("The juvenile court properly considers the GAL's recommendation on the permanent custody motion as part of the R.C. 2151.414(D)(1)(b) analysis where the children are too young to express their wishes."). And it did so, finding that the guardian ad litem recommended permanent custody be granted to the Agency.

{¶ 23} As to the consideration under R.C. 2151.414(D)(1)(c) of Q.S.'s custodial history, the record reflects that Q.S. was first placed with his caregiver

shortly after birth and they had bonded. In total, Q.S. had been in Agency custody for over two years at the time of the hearing. R.C. 2151.414(D)(1)(d) required the juvenile court to consider the need for a permanent placement and whether or not that placement could be achieved without custody being granted to the Agency. Mother did not presently have adequate housing for Q.S. and was residing in an extended stay motel. Further, in considering placement with Mother, the juvenile court found that prior to being placed in temporary housing, "Mother's home was not appropriate to care for the child. Specifically, it was cluttered and too small to accommodate both mother and child."

{¶ 24} Mother argues that the trial court's determination that permanent custody was in A.B.'s best interests was against the manifest weight of the evidence when considering the totality of the circumstances. She further argues that the Agency case workers' testimony were tainted by the hostile relationship she had with one of the case workers. During the pendency of temporary custody, the juvenile court granted Mother's pro se motion to remove the case worker but determined that the case worker had "executed her duties as the assigned social worker for the family without dereliction; all necessary referrals have been made for the family; visitations have been arranged between the mother and child; and all necessary services have been coordinated." Moreover, the juvenile court was in the best position to evaluate the credibility of the Agency's witnesses and determine the extent of bias they may have had regarding Mother. In reviewing the record and the findings by the trial court, it is apparent that the juvenile court considered the

appropriate factors in determining whether or not to award the Agency permanent custody and its findings were supported by competent, credible evidence.

{¶ 25} The trial court did not commit error in its findings of fact or in its assessment of the evidence presented. Throughout her assignments of error, Mother contests the trial court's assessment of the evidence and the findings made and argues that the juvenile court gave too much weight to the testimony of Agency workers. The juvenile court is charged with the discretion to weigh and evaluate the evidence. In this case, the trial court exercised that discretion in evaluating the evidence.

{¶ 26} We have determined that there was competent, credible evidence supporting the juvenile court's findings. Further, when making a determination of whether to grant a motion for permanent custody, the juvenile court may believe any, all, or none of the testimony of any witness presented. *Boyd v. Cuyahoga Cty. Dept. of Children & Family*, 8th Dist. Cuyahoga Nos. 74359, 74360, 74361, and 74362, 1999 Ohio App. LEXIS 1164, 9 (Mar. 25, 1999). Issues of credibility of a witness and the weight to be allotted testimony is primarily for the trier of fact to resolve. *Id*. Our review of the evidence presented to the juvenile court does not lead us to find that the juvenile court improperly weighed or gave improper import to any witness's testimony to the extent that this court could find error in the judgment rendered.

{¶ 27} Accordingly, we overrule the assignments of error and affirm the judgment of the juvenile court awarding permanent custody of Q.S. to the Agency.

## III.  CONCLUSION

{¶ 28} Our review of the record reflects that the juvenile court considered the relevant factors in determining the best interest of the child pursuant to R.C. 2151.414 and did not abuse its discretion.  We further find the juvenile court's decision to grant permanent custody to the Agency and terminate parental rights is supported by competent, credible evidence and is not against the manifest weight of the evidence.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR