[Cite as *In re K.C.*, 2026-Ohio-468.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE K.C.                                       :
                                                 :          No. 115491
A Minor Child                                    :
                                                 :
[Appeal by K.D., Mother]                         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23908847

---

*Appearances:*

A. E. Boles LLC and Alisa Boles, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

DEENA R. CALABRESE, J.:

{¶ 1} K.D. ("Mother"), the mother of K.C. (d.o.b. 7/27/23), appeals the
decision of the Cuyahoga County Juvenile Court ("juvenile court") granting
Cuyahoga County Department of Children and Family Services' ("CCDCFS") motion
to modify temporary custody to permanent custody of K.C. and terminating her
parental rights.  For the reasons stated below, we affirm the juvenile court's decision.

## I. Relevant Facts and Procedural History

{¶ 2} On August 2, 2023, CCDCFS filed a complaint alleging that K.C. was a dependent child and seeking emergency temporary custody. At the time, K.C. was still in the hospital following his birth. The complaint alleged that Mother abused alcohol and muscle relaxers, including while pregnant with K.C., and had not completed a treatment plan. K.C.'s father was later identified and determined to be deceased.

{¶ 3} The complaint also alleged Mother has another child, Ka.D., who was in the temporary custody of CCDCFS at the time of K.C.'s birth. On February 9, 2023, Ka.D. was removed from Mother's care after he "was found in a vehicle with [Mother] and a male partner and both were under the influence and the child was ultimately left unattended in the vehicle." (Tr. 22-23.)[1] The juvenile court granted predispositional temporary custody of K.C. to CCDCFS on August 2, 2023, and he has remained in CCDCFS custody.

{¶ 4} On November 13, 2023, the trial court adopted the magistrate's decision adjudicating K.C. to be a dependent child and committing him to the temporary custody of CCDCFS. On the same day, the trial court adopted a case plan with a goal of reunification. Mother's case-plan objectives included services to address her issues with substance abuse, mental health, housing, and domestic-violence education, and meeting K.C.'s basic needs.

---

[1] The juvenile court also granted permanent custody of Ka.D. to CCDCFS; however, Mother has not appealed that order.

{¶ 5} On April 22, 2024, the trial court found that "Mother had a relapse and has been referred to New Visions." On July 16, 2024, the trial court granted a first extension of temporary custody to CCDCFS. At the same time, the case plan was amended and the objectives included services to address Mother's issues with substance abuse, mental health, and housing.

{¶ 6} On December 17, 2024, CCDCFS filed a motion to modify temporary custody to permanent custody. On April 30, 2025, Mother filed a motion for legal custody to Mother pursuant to R.C. 2151.353, or, in the alternative, a motion for a second extension of temporary custody to August 2, 2025.

{¶ 7} A permanent-custody hearing was held on May 1, 2025. The trial court heard testimony from CCDCFS case worker Suneaqua Halley ("Halley"), CCDCFS case worker John Mbah ("Mbah"), Mother, Lakisha Williams from New Visions, and K.C.'s guardian ad litem Christina Joliat ("GAL").

{¶ 8} Halley testified that she was assigned to K.C.'s case from April 2023 through December 2024. She did not believe Mother benefited from services or that she made progress on her case-plan objectives during this time. Halley did not believe Mother benefited from domestic-violence services because she was involved in a domestic-violence incident after completing services with Journeys. During this time, Mother was not able to show that she had stable housing. Although Mother reported that she engaged in mental-health services with several providers, she never completed the necessary releases of information and Halley was not able to verify Mother's claims. As of December 2024, Halley would not recommend that

Mother have either unsupervised or overnight visits. She also testified that K.C. is bonded to Mother.

{¶ 9} Halley also did not believe Mother benefited from substance-use treatment during the time she was assigned to the case. By December 2024, Mother had completed intensive outpatient treatment with New Visions and a partial hospitalization program, and the provider recommended that she complete aftercare. At that time, Mother was expected to complete drug screens on Saturdays and on a random day during the week. Mother had 24 hours to complete the random drug screens but never appeared within the timeframe, which resulted in those screens being presumed to be positive. During this same time, Halley testified that Mother appeared intoxicated in a social media post and again appeared intoxicated during a staffing conducted via Zoom. There was also an incident in February 2024, where maternal grandparents left K.C. with Mother while she was intoxicated.

{¶ 10} Mbah was assigned to the case beginning in December 2024. He testified that Mother reported she was engaging in mental-health services but never provided verification. Mother completed drug testing in February 2025, then missed eight screens between that date and the date of the hearing. As of the date of the permanent-custody hearing, Mother did not have a sobriety date with CCDCFS because missed screens are presumed to be positive screens. Mbah was not comfortable with recommending unsupervised or overnight visits with Mother because she did not make progress on the objectives of her case plan and he feared she would drive the children while intoxicated.

{¶ 11} Mother testified that she had a pending charge for operating a motor vehicle while under the influence, that she completed two intensive outpatient programs, and that she intended to complete another program.

{¶ 12} Lakisha Williams testified that she is a substance-abuse-disorder counselor and clinician at New Visions, Unlimited, where Mother engaged in substance-use services. Mother was diagnosed with an alcohol addiction, specifically, a severe alcohol use disorder. Mother completed partial hospitalization with New Visions in May 2024, then completed the intensive outpatient program, the outpatient program, and aftercare. During this time, Mother had a positive alcohol screen on September 11, 2024. She believed that New Visions was the third treatment program where Mother engaged in services.

{¶ 13} The GAL recommended that permanent custody be granted to CCDCFS.

{¶ 14} On May 19, 2025, the magistrate granted permanent custody of K.C. to CCDCFS. Mother filed objections to the magistrate's decision, which were overruled by the trial court on July 24, 2025. On the same day, the trial court adopted the magistrate's decision granting permanent custody to CCDCFS and made the following findings, in relevant part:

> Since August 2, 2023, the child has been in either emergency temporary custody or the temporary custody of the agency. The Court adopted the case plan for the family for reunification to be accomplished on November 30, 2023. Mother's case plan objectives included substance abuse, mental health, housing, basic needs, and domestic violence education.

Regarding substance abuse, mother was required to complete an AOD assessment and follow any recommendations and comply with random drug screens as requested by the agency. Mother has completed four (4) substance abuse assessments through LCADA, Signature Health, Ohio Guidestone and New Visions. Mother refused to complete the recommendations of LCADA, Signature Health and Ohio Guidestone. Mother did engage with New Visions for her alcohol use disorder in May 2024. Mother completed a partial hospitalization and an IOP program but has not completed or engaged with the voluntary aftercare program or complete any drug screens in the three weeks preceding trial. Mother testified that she plans on entering an inpatient treatment center soon.

The Court further finds that in February 2025 Mother was charged with an OVI offense that has not been resolved as of trial date. Further mother also has convictions of disorderly conduct on September 28, 2023; OVI on May 1, 2024; and disorderly conduct intoxication from February 2024 and May 1, 2024.

The Court finds that regarding drug screens, Mother has failed to submit since February 22, 2025. Mother does not have verifiable sobriety date.

Regarding the domestic violence case plan objective, Mother was required to complete and benefit from DV education classes. Mother completed two separate classes, but mother has engaged in further domestic violence since the completions. Mother has not engaged in any further education since April 2024.

Regarding Mother's mental health objective, Mother was required to complete as assessment and follow all recommendations. Mother reports that she is engaged with mental health services, but the agency has been unable to verify any of Mother's compliance. Mother presented no evidence of compliance with the mental health portion of her case plan.

Regarding the case plan objective of maintaining stable and appropriate housing, Mother has had three separate homes. Mother recently presented a current lease to the agency.

Mother has weekly supervised visitation with the child. Visitation has not been made unsupervised due to the agency's concerns for mother's behaviors and lack of sobriety.

{¶ 15} Mother appeals from this order, raising the following assignment of error for our review:

> The trial court's award of permanent custody and termination of appellant's parental rights is against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 16} In her sole assignment of error, Mother contends that the trial court's order granting permanent custody to CCDCFS is against the manifest weight of the evidence.

{¶ 17} A juvenile court's decision to grant permanent custody is reviewed under a manifest-weight-of-the-evidence and/or sufficiency-of-the-evidence standard. *In re H.G.*, 2024-Ohio-3408, ¶ 13 (8th Dist.), citing *In re Z.C.*, 2023-Ohio-4703, ¶ 11. In this case, Mother's argument demands a manifest-weight-of-the-evidence review.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179,] ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to

sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.* at ¶ 14.

{¶ 18} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.* at ¶ 7. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re A.M.*, 2024-Ohio-1168, ¶ 15 (8th Dist.), quoting *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994), citing *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St.3d 176 (1987).

## A. R.C. 2151.414(B)(1)(a)-(e) Factors

{¶ 19} The first step in the analysis of a permanent-custody appeal is determining whether one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies. The trial court made findings pursuant to both subsections (a) and (d) of R.C. 2151.414(B)(1). However, Mother's single assignment of error does not address this section of the juvenile court's findings. Therefore, there is no need to address the juvenile court's findings pursuant to R.C. 2151.414(B)(1).

**B. Best Interests**

{¶ 20} The second step in the analysis is determining if permanent custody is in the best interests of the child. The juvenile court looks to the factors laid out in R.C. 2151.414(D), and is required to make findings under one of two alternative provisions as set forth at subparagraphs (D)(1) and (D)(2) of the statute. Here, the juvenile court made findings pursuant to R.C. 2151.414(D)(1).

{¶ 21} R.C. 2151.414(D)(1) requires that when determining the best interests of a child, the court shall consider all relevant factors, including but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 22} Although R.C. 2151.414(D)(1) requires the juvenile court to consider all of the factors, "only one of these enumerated factors needs to be resolved in favor of the award of permanent custody." *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.), citing *In re Moore*, 2000 Ohio App. LEXIS 3958 (8th Dist. Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683 (3d Dist. 1993). With respect to R.C. 2151.414(D)(1)(c), Mother concedes that K.C. has been in the temporary custody of CCDCFS for twelve or more months of a consecutive 22-month period; thus, she concedes that one of the R.C. 2151.414(D)(1) factors is resolved. Therefore, the trial court did not err when it found that permanent custody is in K.C.'s best interests pursuant to R.C. 2151.414(D)(1) and we need not address the remaining factors under that subsection.

{¶ 23} Mother contends that the trial court erred when it failed to grant her motion for a second extension of temporary custody to CCDCFS. The juvenile court found as follows:

> The Court finds that the mother has not made substantial additional progress on the case plan, as required by ORC 2151.415(D)(2) and therefore a second extension of temporary custody cannot be ordered and would not be in the best interest of the child. Furthermore, there is not reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of the extension.

{¶ 24} However, R.C. 2151.415(D)(4) states:

> No court shall grant an agency more than two extensions of temporary custody pursuant to division (D) of this section and the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of

whether any extensions have been previously ordered pursuant to division (D) of this section.

{¶ 25} K.C. was first placed into CCDCFS custody on August 2, 2023. The trial court journalized its entry granting permanent custody to CCDCFS on July 24, 2025. This means that the juvenile court granted permanent custody of K.C. to CCDCFS eight days before the two-year mark from when he was first placed in temporary custody. A review of the record indicates that the case-plan objectives were put into place prior to K.C.'s birth on July 27, 2023, that Mother had not completed the objectives on the case plan at the time of the permanent-custody hearing on May 1, 2025, and that there is no indication she had completed the case-plan objectives by July 24, 2025. It is unlikely Mother would have completed those objectives by an additional extension of temporary custody to August 2, 2025.

{¶ 26} Finding no error, Mother's single assignment of error is overruled and the juvenile court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

LISA B. FORBES, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)