[Cite as *In re G.P.*, 2026-Ohio-1874.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE  G.P., ET AL.                          :

Minor Children                              :                          No. 115914

[Appeal by Father]                          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  May 21, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-24912853 and AD-24912854

---

### *Appearances:*

Scott J. Friedman, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Appellant-father M.P. ("Father") appeals from the decision of the Juvenile Division of Cuyahoga County Court of Common Pleas ("the Court") that terminated his parental rights and granted permanent custody of his children, G.P. and J.P., to appellee, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency").  We affirm based on the reasons that follow.

## I. Factual Background and Procedural History

{¶ 2} CCDCFS filed a complaint for neglect and dependency and sought temporary custody of both children on July 23, 2024. The complaint was based upon concerns about educational neglect of the children, Mother and Father's alleged use of illicit substances and untreated mental-health conditions. Both children were committed to agency custody in August 2024. The initial complaint was not resolved within the statutory time frame and a subsequent complaint was filed on December 9, 2024.

{¶ 3} Upon filing the of the subsequent complaint, the agency was awarded emergency custody and awarded temporary custody after a hearing on March 7, 2025. At the March hearing, the short-term service worker testified that Father had tested positive for drug use, including cocaine. School records demonstrated that both G.P. and J.P. were absent from school for over 100 days in the 2024-2025 school year. The family had a history with agency involvement. The children were out of school from December 2023 until they were removed from Mother in June 2024. At that time, both had numerous special and educational needs that were not being met.

{¶ 4} The concerns with Father were his ability to care for the children, his substance use, his mental health and safe and stable housing. Father informed the agency of his recent release from jail and his substance use. Father has multiple criminal convictions including drug abuse, domestic violence and child endangering.

{¶ 5} A child protection specialist testified that Mother's whereabouts are unknown. She said Father is unstable and his whereabouts were unknown until approximately October or November 2024. The case plan was for reunification and Father was to find stable housing, provide for the children's basic needs, engage in mental-health services and substance-use services. Father was engaged in community medical treatment for methadone services and substance-use case management. Yet, he continued to test positive for drugs beyond methadone on multiple occasions, including both cocaine and marijuana.

{¶ 6} At a review hearing in July 2025 the agency filed a motion to modify temporary custody to permanent custody. The matter proceeded to a hearing on November 10, 2025 where Father was present, but Mother was not.

{¶ 7} At the time of this hearing, the children were eight and nine years old, respectively. The concerns regarding Father's reunification plan remained the same. While he had made some efforts in terms of participation in medical services and was consistently attending supervised visits with the children, he was living at Harbor Lights due to a violation of his probation. Prior to that he was living in men's shelters. He did not have appropriate housing for the children and he had continued to test positive for illicit drugs. With the assistance of the agency, Father had applied to be on waitlists for various county housing but whether, or when, he would obtain it was unknown.

{¶ 8} Both children had significant behavioral and educational needs. G.P. had been diagnosed with cerebral palsy requiring ankle braces. She also has autism

and ADHD and was developmentally delayed in school but was catching up since entering foster care. J.P. is also diagnosed with ADHD and autism and had more significant and aggressive behavioral issues which required his education to be in a self-contained classroom, with support. Both children require occupational, physical and speech therapies.

{¶ 9} The court appointed special advocate ("CASA") and the guardian ad litem ("GAL") both noted that the children had positive interactions with Father and there appears to be no dispute that Father loves them. Father did not have any verified income but self-reported having applied for a job with Amazon.

{¶ 10} A few relatives were investigated for custody but none expressed a willingness to be the caregiver for the children. The children continued to thrive in the care of the foster parents. Neither child expressed their wishes or preferences regarding custody. The GAL, the CASA and the specialist from the agency all recommended permanent custody to the agency as being in the children's best interest.

{¶ 11} On November 14, 2025, the court committed the children to the permanent custody of CCDCFS for purposes of adoption and terminated all parental rights and responsibilities of Mother and Father. Father appealed and argues that the court's decision that terminated his parental rights was against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 12} A juvenile court's decision to grant permanent custody is reviewed under a manifest-weight-of-the-evidence and/or sufficiency-of-the-evidence standard. *In re H.G.*, 2024-Ohio-3408, ¶ 13 (8th Dist.), citing *In re Z.C.*, 2023-Ohio-4703, ¶ 11.

{¶ 13} In his sole assignment of error, Father argues that the decision to terminate his parental rights and grant permanent custody to the agency was against manifest-weight-of-the-evidence.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179,] ¶ 20, 972 N.E.2d 517. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 N.E.2d, 10 Ohio B. 408, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.* at ¶ 14.

{¶ 14} "Under R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to the agency that moved for permanent custody if the court determines, 'by clear and convincing evidence, that it is in the best interest of the

child' to do so and that one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies." *In re Z.C.* at ¶ 7. "Clear and convincing evidence is 'that measure or degree of proof, which is more than a mere "preponderance of the evidence" but not to the extent of such certainty required "beyond a reasonable doubt" in criminal cases and, which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re A.M.*, 2024-Ohio-1168, ¶ 15 (8th Dist.), quoting *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist. 1994), citing *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St.3d 176 (1987).

## A. R.C. 2151.414(B)(1)(a)-(e) Factors

{¶ 15} The first step in the analysis of a permanent-custody appeal is determining whether one of five factors enumerated in R.C. 2151.414(B)(1)(a) through (e) apply. The court found that the children could not be placed with either parent within a reasonable time or should not be placed with them pursuant to subsection (a). This finding is supported by clear and convincing evidence in the record and the trial court's findings pursuant to R.C. 2151.414(E).

## B. R.C. 2151.414(E) Factors

{¶ 16} The court found that subsections (1), (4), (10), (14), (15) and (16) of R.C. 2151.414(E) supported its finding that the children could not be placed with either parent within a reasonable time or they should not be placed with them. The findings are addressed in order below.

> (1) Following placement of the child outside the child's home, and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially

caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

This finding is supported by clear and convincing evidence in the record, including, but not limited to, Father's inability to maintain sobriety or to secure appropriate housing for the children throughout the entirety of the proceedings despite diligent efforts by the agency to assist him. Further, Father had no income or verified employment.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child . . . .

{¶ 17} The court did acknowledge that Father consistently visited the children and participated in substance-abuse treatment but had no means of supporting the children financially and he continued to struggle with his housing due to his outstanding warrants, a probation violation and his continued substance use. The court cited the children's significant special needs as a significant factor in its decision and noted Father had not completed any parenting class or learned how to meet the special needs of the children. This finding is supported by the record.

(10) The parent has abandoned the child.

{¶ 18} Father does not dispute the court's finding that Mother had abandoned the children.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

**{¶ 19}** The reasons that support the fourth factor also support this finding.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

**{¶ 20}** The court noted that Father had done nothing to address the educational needs and medical neglect that the children experienced which led to their removal. The witnesses testified that G.P.'s cerebral palsy was not known to the agency until she was taken for medical care and it was learned that neither parent had followed up to address this condition. After removal, G.P. had surgery and received corrective braces. The other significant needs of the children that were unaddressed by either parent have been previously detailed. This finding is supported by clear and convincing evidence.

(16) Any other factor the court considers relevant.

**{¶ 21}** The court found the children's special needs were a significant factor weighing in favor of its decision to grant permanent custody to the agency. This finding is amply supported by the record with clear and convincing evidence.

### C. Best Interests

**{¶ 22}** The second step in the analysis is determining if permanent custody is in the best interests of the child. The court reviews the R.C. 2151.414(D) factors and is required to make findings under one of two alternative provisions as set forth

at subparagraphs (D)(1) and (D)(2) of the statute. Here, the court made findings pursuant to R.C. 2151.414(D)(1).

{¶ 23} R.C. 2151.414(D)(1) requires that, when determining the best interests of a child, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another State;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 24} Although R.C. 2151.414(D)(1) required the court to consider all of the factors, "only one of these enumerated factors needs to be resolved in favor of the award of permanent custody." *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.), citing *In*

*re Moore*, 2000 Ohio App. LEXIS 3958 (8th Dist. Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683 (3d Dist. 1993).

{¶ 25} In this case, the court found all the subsections weighed in favor of permanent custody to the agency with subsections (d) weighing "very heavily" in favor of permanent custody to the agency. These findings are supported by clear and convincing evidence in the record.

{¶ 26} Father does not contest any of the findings directly or specifically. Rather, he generally argues that his progress and cooperation with the case plan should outweigh them. Father cites no authority to support this position. The best interest inquiry is focused on the children's best interest, not the parents. The court did acknowledge Father's efforts but detailed several reasons why it was nonetheless awarding permanent custody to the agency in the best interest of the children.

{¶ 27} The children have remained in agency custody since August 2024 and were placed with the same foster family. Despite this significant amount of time, Father had made little progress on his case plan that would have enabled reunification at any time in the foreseeable future. Both the CASA and the GAL reported that the children are doing well, attending schools and their needs are being met. Both CASA and GAL recommended permanent custody be granted to the agency. The court's decision to terminate Father's parental rights and award permanent custody to the agency is not against the manifest of the evidence.

{¶ 28} Father's assignment of error is overruled and the court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR